\*STEWART ELLISON v. ALDERMEN OF RALEIGH.

*Municipal Body, power to remove member of—Color of authority— Mandamus—Quo Warranto—Office or Place, what is.*

1. The plaintiff was elected an alderman of the city of Raleigh, and excluded by a resolution of the defendant board from acting as a member thereof and his seat declared vacant, upon the ground, that he held "an office or place of trust or profit" under the United States government, at the time of his election as alderman, and was therefore ineligible under the constitution ; *Held,* that the action of the defendants was not warranted by law.

---

\*Mr. Justice MERRIMON having been of counsel, did not sit on the hearing of this case.

2. A municipal body cannot deprive one of its members of his place for causes, affecting his ineligibility, that existed at the time of his election.

3. But where, in such case, one is removed and his successor elected and inducted in to office under a power given to fill vacancies, such successor holds under color of competent authority, and is a *de facto* officer : and the plaintiff, being the adverse claimant, cannot be reinstated by *mandamus* against the defendants, but must resort to *quo warranto*.

4. What is an office or place within the meaning of the constitution, and how far the court can go in reinstating one improperly removed from office, but who may be ineligible to hold it (?).

(*Howerton v. Tate*, 66 N. C., 231 ; *Brown v. Turner*, 70 N. C., 93 ; *Cloud v. Wilson*, 72 N. C., 155, cited and approved).

CIVIL ACTION in which application is made for the writ of *mandamus* heard at June Term, 1883, of WAKE Superior Court, before *Philips, J.*

The plaintiff was elected an alderman of the city of Raleigh, and asked to be restored to the office from which he was removed by the defendants, but the court, being of opinion that T. J. Bashford, who had been elected by the board of aldermen, in place of the plaintiff, was a necessary party to the suit, and that the question of title to the office was raised by the pleadings and evidence, refused to grant the writ, and the plaintiff appealed. The facts are sufficiently set out in the opinion.

*Messrs. D. G. Fowle, T. M. Argo, J. B. Batchelor* and *Walter Clark*, for plaintiff.

*Messrs. Reade, Busbee & Busbee, Fuller & Snow* and *A. M. Lewis & Son*, for defendants.

SMITH, C. J. The plaintiff was duly (elected ?) an alderman from one of the wards into which the city of Raleigh is divided, took the oath of office before the mayor and was present with his associate members of the board at three successive meetings of the body. At the third session, held on May 15, 1883, the plaintiff being present and occupying his seat, as he had hitherto done without objection from any source, a resolution was offered

by one of the aldermen (the transcript of which was not introduced on the trial), vacating or declaring vacant the plaintiff's seat by reason of his incompetency in holding an office or place of trust under the government of the United States, at the time of his election, and since. The resolution was put to a vote upon a call for the previous question, and, upon a refusal to hear the plaintiff, was declared by the casting vote of the presiding officer, the mayor, to have passed. Nor was the plaintiff's name called in calling the roll, nor he allowed, though demanding the right to vote upon the passage of the resolution. After the plaintiff's ejection, the board proceeded to supply his place by the election of T. J. Bashford under the provision of the city charter (§20) for filling a vacancy, and the plaintiff has since been excluded from acting with the body to which he had been elected.

This succinct statement of facts connected with the expulsion of the plaintiff and the admission of said Bashford, as his successor, suffices to present the question, whose solution, in our view, is decisive of the case on appeal.

The proceeding is by *mandamus* to compel the restoration of the plaintiff to his office, and against the city of Raleigh and aldermen by name except the said Bashford, who is not made a party, either in person or as a member of the board.

Without pausing to animadvert upon the very irregular and summary method adopted to expel a member from his seat without a hearing and the suppression of all discussion of the propriety of the contemplated action of the board, while there can be no serious doubt of the right of a corporate body to vacate the seat of a corporate officer for adequate causes arising subsequent to taking his seat, since the case of *Rex* v. *Richardson*, 1 Burr., 539, decided by LORD MANSFIELD and followed by numerous others, we have been unable to find any precedent for depriving a member of his place by the action of a municipal body of which he is a member for any pre-existing impediment affecting his capacity to hold the office. On the other hand the

same eminent judge in passing upon the sufficiency of a return to a *mandamus*, says: "It is admitted that they (the Mayor and Burgesses of Lynn, the defendants), could not remove for want of an original title"; and again, "the dueness of the election is immaterial, for the corporation could not judge of the title" of the party prosecuting his right to the place. *King* v. *Lynn*, Douglas, 85.

So in Lord Bruce's case, 2 Strange, 819, the court say that a power of amotion is incident to a corporation according to modern opinion, and this exercise of inherent corporate authority in the cases pointed out by Lord Mansfield in *Rex* v. *Lynn*, may be essential to attaining the ends for which the corporation was formed. Angel and Ames, Corp., §423.

"The power to remove a corporate officer from his office for reasonable and just cause," says Judge Dillon, "is one of the common law incidents of all corporations." 1 Muni. Corp., §179.

The board of aldermen, thus possessing the power under certain circumstances to vacate the seat of one of their number (the occasions for doing which, and among them—conduct on his part in opposition to his oath and duty as a corporator, are mentioned by Lord Mansfield), have chosen to remove the defendant for the assigned reason of his incompetency under the constitution to occupy the place, he at the time of his election holding the appointment of janitor or custodian of the court-house of the United States in said city, and to elect and put another in his place, who has assumed to act with his associate members and been recognized by them as the lawful incumbent in all their subsequent official transactions. His successor having been thus inducted into the office under color of competent authority, even though the amotion of the plaintiff was in excess of the power conferred in the charter, becomes an officer *de facto*, and his co-operating acts in the body are as effectual in their relations to others as if he had filled the place *de jure* as as well as *de facto*. The charter confers authority upon the board to fill a vacancy when any occurs in their body and they

must determine the existence of the vacancy in order to the exercise of the power of supplying it.

Can the plaintiff then avail himself of the remedy by writ of *mandamus* against the wrong-doers and obtain the ouster of the present occupant and the restoration of the office to himself without the presence in the action of the alleged usurper?

In our opinion, the plaintiff misconceives the redress, and the mode of obtaining it provided by law.  A *mandamus* is appropriate, when there is no usurpation by another, and the end sought is to compel those who ought to admit, and refuse to admit the person entitled by law to fill the place, to perform their duty in this behalf; and the writ may be granted, says Mr. WILLCOCK, " when *quo warranto* does not lie, although the office be already full, as otherwise, in many cases, the applicant would be without remedy."    Dill. Mun. Corp., §678.

*Mandamus* may be sought to compel the city council to admit a councilman duly elected to that office.  *State* v. *Rahway*, 33 N. J. L., 111, cited by Dillon in section 679.    But as this writer remarks in the next section, .680, " the adjudged cases in this country agree that *quo warranto*, or an information or *proceeding in the nature of a quo warranto*, is the appropriate remedy, when not changed by charter or statute, for an usurpation of a municipal franchise, as well as for unauthorized usurpations and intrusions into municipal offices "; and the author proceeds:  "If another is commissioned and in actual discharge of the duties of the office, an adverse claimant to the office is *not entitled* to a *mandamus*, but *must resort to quo warranto.*"  The wrongful occupant must, however, have entered under color of authority and not be a mere usurper, in the restricted sense of that term, to put the rightful claimant to the necessity of a resort to this remedy.

In this state, the writ of *quo warranto* and proceedings by information in the nature of *quo warranto,* are abolished, and the remedies which these forms formerly furnished can be

obtained under special provisions made by statute.  C. C. P.,
§362, a substantial re-enactment of IX ANNE.

It is expressly declared in section 366, that an action may be
brought by the attorney-general upon his own information or on
the complaint of any private party against offenders, "when any
person shall usurp, intrude into, or unlawfully hold or exercise
any public office, civil or military, or any franchise within this
state, or any office in a corporation created by the authority of
this state."

The statute provides thus and in subsequent sections for the
fullest relief to the rightful claimant, against an unlawful intru-
sion, and thereby dispenses with the need of recourse to other
process, unless those required to induct, still refuse to do so, after
the amotion of the intruder by the judgment of the court; and
then they may be compelled to proceed in the discharge of their
duties.  As the statutory remedy is ample, so where it can be
had and made effectual, it is the only mode of deciding the con-
flicting claims to office by an adjudication between the contest-
ing parties.

In *Howerton* v. *Tate*, 66 N. C., 231, this court remarked that
"supposing the writ of *mandamus* to be the proper remedy,
*which we do not concede* (C. C. P., §§366 and 367), the proceed-
ing was not properly instituted."

The doubt intimated is resolved in the subsequent case of
*Brown* v. *Turner*, 70 N. C., 93, wherein, after an elaborate dis-
cussion, the court, BYNUM, J., delivering the opinion, thus speak:
"Is the plaintiff prosecuting his claim by the right form of
action?  *Mandamus* is a proceeding to compel a defendant to
perform a duty which is owing to the plaintiff, and can be main-
tained only on the ground that the relator has a present, clear,
legal right to the thing claimed, and that it is the duty of the
defendant to render it to him.  If it appears from the complaint
that two persons are claiming the same duty adversely to each
other against a third party, the writ does not lie; Tom. Law
Dict.  *Mandamus;* Burr. 1452; and that for the plain reason

that the title must be decided between them before the defendant can know to whom the duty or thing is due." * * * "The question of title is put directly in issue, and when that is the case, *mandamus* is not the form of action; but the appropriate remedy is an action in the nature of *quo warranto,* not against Howerton, but against Turner."

The title here is in dispute so as to induce us to refrain from ordering any specific action to be performed by the board until the controversy is settled and the right determined by a direct adjudication. But if there were no other objection to the present form of proceeding, an insuperable obstacle is presented in the fact that the court is called on to pass upon the rights of one who is not a party to it. This is indispensable to his being affected by the result. *Rex* v. *Banks,* 3 Burr., 1452.

In support of a qualified recognition of the right of a re-moved officer to be reinstated through the command of the court in section 67 (High on Legal Rem.), reference is made in an appended note to several decisions which we have looked into and find but one (*Drew* v. *Judges, &c.,* 3 Hen. & M. (Va.) 1), fully sustaining the text. In a return to the rule to show cause why a *mandamus* should not issue to the defendants to admit the plaintiff to the office of clerk of the said district court, whereof the defendants were judges, it appeared that the plaintiff pro-duced on the first day of the session the evidence of his appoint-ment and his taking the prescribed oath, but did not tender a sufficient bond as required by law. The court thereupon ap-pointed another in his stead, who at once proceeded in the dis-charge of his official duties. Four days thereafter the plaintiff offered a sufficient bond and was refused admittance to the office. The *mandamus* was then asked and the rule to show cause ordered to issue. It was held that the plaintiff was not required to qual-ify on the opening of the court, and was in time in making his application afterwards according to the statute. In answer to the objection that the incumbent ought to have been served with notice of the pending motion, TUCKER, J., says "it was properly

answered that the return shows he had notice, being attested by him, and. the record shows he did appear in the general court as a party and consent to the award of a commission to take deposi-tions." This decision may find support in the exceptional fea-tures of the case, the office being under the direct control of the court, so that full relief could be administered with a due regard to the rights of both contestants. The *mandamus* is held a pro-per remedy in the case, among other reasons, because the right to proceed by a *quo warranto* information is not guaranteed to every citizen and can only be prosecuted by leave of the attorney-general.

But our statute (§366 of C. C. P.), bearing the title, "action upon information or complaint of course," seems to contemplate the action as one open upon the complaint of any private party, and if its institution as a remedy for a violated civil right is left to the discretion of the attorney-general (and we are not ready to concede an arbitrary discretion in the matter), we must assume that in every proper case his consent on proper terms will be given.

This was the method of procedure adopted in *Cloud* v. *Wilson*, 72 N. C., 155, where the defendant entered into the office of judge by virtue of an election authorized by an act of the legislature to fill an unexpired term, and it was sustained although the statute was in violation of the constitution and all done under its sanction was absolutely null. The controversy was between an officer *de jure* and one *de facto* and this was recognized as the legal method of determining it.

We do not propose to inquire whether the office or place held by the plaintiff at the time of the election and since is an "office or place of trust or profit" within the meaning of the constitu-tional amendment of 1875, which is but the restoration of a clause contained in the amendments made in the constitution of 1835 and omitted in that of 1868, for it is no easy task to run the dis-criminating line which separates such offices and places from employments in the public service which are not embraced in

those terms.   Nor will we consider how far the court should go in reinstating in office, one improperly removed but who may appear disabled and forbidden by law to possess it and exercise its attached privileges and rights in the opinion of the court.   It is enough for us to see that the right to the office is drawn in question and that one who entered in the form of law and is in the possession of the place discharging its duties is to be affected by the decision without having an opportunity to be heard.

It is certainly inadmissible to command the defendants to receive the plaintiff into their body without at the same time removing their appointee, for the ward cannot have a representation in excess of the number allowed in the charter, and if this is to be the effect it is as just to give him a hearing, as it was to give the plaintiff a hearing before his expulsion.   The argument on both sides has been able and exhaustive of the learning on the points discussed, to only one of which, preliminary to any examination of the merits, have we found it necessary to give attention.

There is no error, and the plaintiff is not entitled to his writ. It is so adjudged.

No error.                                        Affirmed.