STATE ex rel., T. J. MARKHAM v. SIMPSON.

(Filed 20 February, 1918.)

### 1. Public Officers—Terms—Holding Over—Municipal Corporations—Constitutional Law—Statute.

The provisions in municipal charters that incumbents of offices, both elective and appointive, shall hold until their successors are selected and qualified, are recognized by our Constitution, Art. XIV, sec. 5, and our general statute, Revisal, sec. 2368; and whether regarded as a part of an original term or a new and conditional one by virtue of the statute, the holders are regarded as officers *de jure* until their successors have been lawfully elected or appointed and have properly qualified.

### 2. Public Officers—Presiding Officers—Casting Vote—Municipal Corporations.

A duly qualified presiding officer of a municipal board, who is also a member, may lawfully vote on questions properly coming before the board for decision, and may cast the deciding vote as presiding officer when the law, or valid rule of the body itself, governing the proceedings confers such right upon the presiding officer.

### 3. Same—Voting for Self—Pecuniary Interest.

While a member of a municipal corporation may not be allowed to vote on private matters directly affecting his own pecuniary interest, this does not prevent his voting for himself on a question of organization of the board of which he is a rightful member, such being a question of public concern, and, at times, within the performance of his duty.

### 4. Public Officers—Municipal Corporations—Presiding Officer—Holding Over—Officer de Facto.

Semble, in this case, the chairman of a municipal board, having the charter power to do so, lawfully gave his casting vote for the incumbent for mayor; and, *Held*, were it otherwise, such incumbent held the office as an officer *de facto*, with the right to exercise its powers, etc., under color of his former election.

### 5. Public Officers—Title—Quo Warranto.

Direct proceeding in *quo warranto* is the proper one to test the validity of an election of mayor of an incorporated town by the vote of its governing board, etc., under its charter and the general law applicable.

### 6. Public Officers—Municipal Corporations—Mayors—Vote—Statutes.

Ordinarily the duties of a mayor of an incorporated town are of an executive or administrative character, not permitting him a vote either as member or presiding officer of the municipal board, unless the privilege is conferred by correct interpretation of the charter or general law applicable.

### 7. Same—Charters—General Statutes.

Where the charter of an incorporated town does not, by proper construction, confer upon the mayor the right to vote either as a member or presiding officer of the municipal board, but does confer the right to preside at its meetings, sign contracts, veto ordinances, and other like pow-

ers, he may, under the general statute applicable when not inconsistent with the charter, give a casting vote, in reference to appointive officers, in the event of a tie, whose appointment is referred to the board under provisions of the charter.

**8. Same—Repealing Acts—Presumptions.**

Where the right of the mayor of an incorporated town to vote as a member of the municipal board, and to give his casting vote, as its presiding officer, in case of a tie, exists under the general law applicable, the fact that such power was expressly given in the original charter of the town, and left out of a subsequent act, repealing the former one, and setting forth powers, etc., of the town, will not forbid that such right should be exercised under the general statute applicable when such interpretation is not inconsistent with the new powers, etc., conferred on the town.

CIVIL ACTION, in the nature of *quo warranto,* to determine the question of title to the office of City Attorney of Elizabeth City, N. C., tried by consent on the pleadings and facts admitted before *Kerr, J.,* at September Term, 1917, of PASQUOTANK.

There was judgment for defendant, and relator and plaintiff, having duly excepted, appealed.

*Meekins & McMullans for plaintiff.*
*E. F. Aydlett for defendant.*

HOKE, J.  Chapter 341, Private Acts of 1915, entitled "An act to revise and consolidate the charter of Elizabeth City," as a basic proposition, vests the government of the city in a board of aldermen consisting of eight members, two from each of the four wards, to be elected by the voters of the wards, respectively, the election to be held on Tuesday after the first Monday in May, 1915, and every two years thereafter, to hold their positions for the term of two years and until their successors shall have been elected and qualified, "and to be installed" on the first Monday in June following their election.  Provision is further made that, on said first Monday in June said aldermen-elect shall qualify by taking the proper oath of office, to be duly entered on the minutes, and shall then organize by electing one of their members chairman, "who shall preside at their meetings and perform the duties of the mayor in his absence or sickness."  That, after said board shall have been organized, "as heretofore directed," they shall proceed to appoint certain executive and administrative officers of the city, including the mayor, city attorney, etc., to hold their offices for the term of the board appointing them and until their successors have been duly elected and qualified."

Pursuant to these provisions, an election was held in Elizabeth City in 1915, and thereafter the eight aldermen-elect, having duly organized,

elected one P. G. Sawyer mayor and the relator of plaintiff as city attorney, who qualified for their respective positions and continued in the discharge of their duties for the term of two years, and further, as hereinafter stated, that at the regular city election in 1917 eight aldermen were chosen who seem to have been equally divided on all debated questions and, in the proceedings to organize on the first Monday in June, 1917, the former mayor presiding, four of the aldermen voted for Alderman Owens as chairman and four for Alderman Cohoon, and thereupon, the said P. G. Sawyer, presiding as mayor, cast the deciding vote for Alderman Owens, who qualified as chairman. The board so organized proceeded to appoint a mayor, four of them, including Alderman Owens, voting for P. G. Sawyer, former mayor, and the other four voting for one W. C. Glover, Esq. That Alderman Owens, as chairman, gave the casting vote for P. G. Sawyer and he appeared and qualified as mayor. That the board, then in meeting presided over by the newly appointed mayor, or as holding over under his former appointment, proceeded to select the other appointive officials and, among others, appointed defendant as city attorney for the incoming term, four of the aldermen voting for said defendant and four voting for W. L. Small, Esq., the mayor giving the casting vote for defendant, who was duly qualified and has since continued in the discharge of the duties of the office.

The provision that the incumbents of offices, both elective and appointive, shall hold until their successors are selected and qualified is in accord with a sound public policy which is against vacancies in public offices and requiring that there should always be some one in position to rightfully perform these important official duties for the benefit of the public and of persons having especial interest therein.

It appears twice in this charter in reference to these appointive offices. Sections 44 and 131 are recognized both in our Constitution and general statutes, Constitution, Art. XIV, sec. 5, and Revisal, sec. 2638, and, whether regarded as part of an original term or a new and conditional term by virtue of the statute, the holders are considered by the authorities as officers *de jure* until their successors have been lawfully elected or appointed by the body having the right of selection, and have been properly qualified, and the relator of plaintiff having been the former attorney of the city, the question presented is whether, as his successor in the office, defendant has been rightfully appointed. *People ex rel. Richardson v. Henderson,* 4 Wyo., 535 (22 L. R. A., 751); *S. ex rel. Howe,* 25 Ohio St., 588; 18 Amer. Rep., 321; *S. ex rel. Carson v. Harrison,* 113 Ind., 663; *People v. Tilton,* 37 Cal., 614; *Smoot v. Summerville,* 59 Md., 84; *Walker v. Ferrel,* 58 Ga., 512.

On the record, as we understand it, his tenure is challenged on the ground (1) that, in the present instance, there had been no valid appointment of P. G. Sawyer as mayor to succeed himself in that office; (2) if otherwise, there had been no valid election of defendant as the mayor had no right to give the casting vote in defendant's favor.

In reference to the first position, while it may not be in accord with strict parliamentary law, it is the prevailing rule in this country that, in the case of these municipal boards, a presiding officer who is also a member has the legal right, as such member, to vote on questions coming properly before the body for decision and to vote a second time as presiding officer when the law or valid rule of the body itself, governing its proceedings, confers upon such officer the right to give the casting vote. *People ex rel. Remington v. Rector,* 48 N. Y., 603; *Whitney v. Common Council,* 69 Mich., 189; 2 McQuillan Munic. Cor., sec. 590. And it is held that the right of such presiding officer to give such vote, when authorized to do so, is not affected because of the fact that the question for decision may be that of confirming or validating his own appointees to office. *McCourt v. Beam,* 42 Ore., 41; *Carrol v. Wall,* 35 Kan., 36. And, furthermore, we are aware of no principle or precedent that prevents a member of either a legislative or municipal board from voting for himself on a question of organization, the matter being referred usually to his own sense of propriety. It is generally understood that such member should not be allowed to vote on private bills or in relation to contracts directly affecting his personal pecuniary interest nor on the question of his own right to a seat, but, being fully recognized as a rightful member, the question of a proper organization is one rather of public concern, and it is not only the privilege but may become the patriotic duty of a member so to vote. We recall an instance in this State where a constitutional convention, charged with the duty of determining questions gravely affecting the weal of the entire Commonwealth, was organized and successfully carried on by means of a vote of this character.

It would seem, therefore, that, if Alderman Owen, who as presiding officer of this meeting is given by the charter the power to preside and otherwise act as mayor, had the privilege of a casting vote, P. G. Sawyer was rightfully elected mayor and presided at the meeting as his own rightful successor. Apart from this, if relator of plaintiff is correct in his first position, it would not avail him or in any way affect the result, on the facts of this record, for, both under the charter and general statutes applicable, P. G. Sawyer, as former mayor, had the full right to act as such till his successor was appointed and qualified, and in any event he would be mayor *de facto* with full right as to third parties and as to these contestants to perform all the duties appertaining to such office while he held the position under color of an appointment by

the board in whom the power was vested. *S. v. Lewis,* 107 N. C., 967; *Ellison v. Raleigh,* 89 N. C., 125; *S. v. ex rel. Norfleet v. Staton,* 73 N. C., 546; *Comrs. v. McDaniel,* 52 N. C., 107; *Magenan & Bruner v. City of Fremont,* 30 Neb., 843. His right to act as mayor could only be questioned by direct proceedings, as in this present suit between relator of plaintiff and defendant.

For these various reasons and as now advised, we are of opinion that there was a lawful organization of the present board of aldermen on the first Monday in June, 1917; that plaintiff P. G. Sawyer rightfully acted as mayor on the occasion and the issue between these two contestants is restricted to the second proposition, whether the said P. G. Sawyer, as such mayor, had the right of giving the casting vote for defendant as city attorney.

The ordinary duties appertaining to the office of mayor are rather executive or administrative in character, and he is usually not allowed a vote either as member or presiding officer of a municipal board unless the privilege is conferred by correct interpretation of the charter or the general statutes applicable. 2 Dillon Mun. Cor., sec. 573; 2 McQuillan, sec. 584.

On this subject, the charter of the city provides, in section 62, that the mayor shall preside at all meetings of the board of aldermen and shall be the official head of the city for the service of civil process. He shall sign all contracts and franchises and other paper-writings authorized and passed by the board of aldermen. In section 63 he is given a veto power on all ordinances, contracts, and franchises which may have passed the board of aldermen, in which case they can only be validated on a *six-eighths* vote and, in case of approval, he is required to signify such approval on the minutes of the board. Section 64 establishes his salary, and in section 65 he is to fill the position of city manager and receive his salary in case of a vacancy of that office or a failure of the incumbent to perform his duties. The right to vote either as a member of the board or as presiding officer, in case of a tie, is nowhere given in express terms, and from a perusal of the sections directly applicable and other cognate provisions, it is clear, we think, that the power is not given to the mayor in the charter either in the one case or the other. *S. v. Miller,* 62 Ohio State, 636; 78 Amer. St., 732; *Cate v. Martin,* 70 N. H., 135; 48 L. R. A., 613; 19 R. C. L., 186.

In *Intendent and Comrs. v. Sorrel,* 46 N. C., 49, cited to the contrary, the act provided that the "intendent should have a *seat in the* board of commissioners and when present shall preside therein, and, in this and other cases of like tendency, there was language in the charter constituting the presiding officer a member of the board or he was understood to have no vote. We are of opinion, however, that the right of casting

the deciding vote in this case arises to the mayor by reason of the general law on the subject. In the Revisal of 1905, ch. 73, relating generally to the government of cities or towns, it is enacted, in effect, that a mayor shall have a casting vote in case of a tie and not otherwise. And, in section 2918, that this chapter shall apply to all incorporated cities and towns when the same shall not be inconsistent with special acts of incorporation or special laws in reference thereto."

While the power in question is not expressly conferred in the charter, there is nothing contained therein that is inconsistent with the mayor's right to give a casting vote in case of a tie, assuredly not on all questions other than those appertaining to ordinances, contracts, and franchises, as to which his powers and duties are very specifically stated and under the general statutes referred to he has clearly the right to give such vote in reference to these appointive offices.

It is urged for the relator of plaintiff that, as this very provision for a casting vote was conferred in express terms, under the provisions of a former charter, that of 1911, and is omitted in the present act, this omission shows an intent on the part of the legislature to withdraw the power and that the later act, which is entitled "An act to revise and consolidate the charter of Elizabeth City," should be construed as repealing the former charter *in toto*. While implied repeals are not favored in the law or to be readily presumed, *State Treas. v. Sanatorium,* 173 N. C., 810, it is also recognized, as relator of plaintiff contends, that when a subsequent statute covering the entire subject gives clear indication that it was intended as a substitute for the former, it will operate as a repeal of the former law, and it is probably the correct position that the later charter is a repeal of that of 1911, but the principle does not extend to a repeal of a general statute on a subject of this character and which provides in express terms that its provisions shall apply except when inconsistent with the special law.

There are many instances, no doubt a majority of the cities and towns of this State having boards of aldermen or commissioners of even number and some provision of this kind is often essential to the efficient working of a city government. It was, no doubt, left out of the later charter because it was supposed, and rightfully, we think, that the general law would apply except in cases where the charter expressly intended otherwise.

On the record, we concur in the view of the court below and are of opinion that defendant has been rightfully appointed.

Affirmed.