MRS. LENORA BERRY, R. C. BERRY, MRS. W. E. CLARK, R. S. COX,
S. D. COX, MRS. J. O. CREDLE, SAMMY CUTHRELL, W. C. DAVIS,
C. B. GIBBS, DURWOOD GIBBS, MRS. J. B. GIBBS, J. L. GIBBS, T. A.
GIBBS, J. O. GIBBS, SR., MRS. S. J. GIBBS, J. C. GROCE, C. S.
GUTHRIE, G. M. GUTHRIE Estate, H. B. GUTHRIE, MISS JANIE
GUTHRIE, J. S. HARRIS, MRS. CORA L. HODGES, MRS. LAURA
LITCHFIELD, MAX G. MANN, B. C. MARSHALL, MISS ANNIE MID-
YETTE, MRS. J. L. SANDERSON, E. D. STOWE, MRS. ADDIE SPEN-
CER, MISS FANNIE, RUDOLPH R., W. J. AND SAM C. SPENCER,
SAM H. SPENCER, JOSHUA SWINDELL, MRS. J. V. SWINDELL,
J. W. SWINDELL, MRS. L. B. SWINDELL, W. J. SWINDELL, C. W.
WATSON, RUFUS WILLIAMS, IN THEIR OWN BEHALF AND ON BEHALF
OF ANY AND ALL OTHER PROPERTY OWNERS RESIDING IN THE COMMUNITY
OF ENGELHARD WHO MAY BE INTERESTED IN THE SUBJECT OF THIS
LITIGATION AND WHO DESIRE TO COME IN AND MAKE THEMSELVES PARTY
PLAINTIFFS, v. W. W. PAYNE, CLOSS GIBBS, R. S. SPENCER, S. S.
NEAL, I. B. WATSON AND GEORGE C. BROWN.

(Filed 26 February, 1941.)

1. **Appeal and Error § 37e—**

Where the parties waive a jury trial and agree to trial by the court,
the court's findings of fact from the evidence are binding and conclusive
upon appeal. Michie's Code, 556, 569.

2. **Public Officers § 5b—**

A *de facto* officer is one whose title is not good in law, but who is in
fact in the unobstructed possession of the office, discharging its duties
in full view of the public, in such manner and in such circumstances as
not to give the appearance of being an usurper.

3. **Same—**

The acts of a *de facto* officer will be held valid upon principles of policy
and justice as to third persons having occasion to deal with the officer,
since third persons have the right to act upon the assumption, without
investigating his title, that he is a rightful officer.

4. **Same—Mayor and commissioners reorganizing municipal government
after lapse of fourteen years, during which two of them accepted other
public offices, held de facto officers of the municipality.**

The mayor and board of commissioners of a municipality were named
in the act creating the municipality. Upon the calling of an election at
the end of two years, no voters presented themselves, and thereafter for
a period of twenty-four years none of the officers named in the charter
performed any official duties. During this period two of them were elected
to other public offices and duly qualified and acted in the discharge of
the duties pertaining to such other offices. At the expiration of this
period the mayor and surviving commissioners named in the charter reor-
ganized the municipal government, elected successors to commissioners who
had died, and acted openly in procuring a WPA grant for the construction
of a town hall or municipal building, in obtaining county aid therefor,
and in levying municipal taxes after due advertisement to meet the

municipality's share of the cost of constructing said building. *Held:*
The mayor and the commissioners of the town were *de facto* officers, and
their acts are valid and binding as to all third persons dealing with them
in their official capacity in regard to the construction of the municipal
building.

**5. Municipal Corporations § 45a—Taxpayers held estopped by their conduct from attacking validity of municipal tax levy.**

*De facto* officers of a municipality in response to a petition, signed by
residents of the municipality, including some of plaintiffs, reorganized the
municipal government for the purpose of procuring a town hall or municipal building, and, pursuant to this purpose, obtained a WPA grant therefor and aid from the county in its construction, duly levied taxes to raise
the town's part of the cost of said construction after due advertisement,
and collected a large part of the taxes so levied without protest on the
part of plaintiffs, although they had full knowledge of each and every
step taken. Thereafter plaintiffs instituted this action to restrain the
collection of the taxes on the ground that the *de facto* officers were not the
duly authorized governing agency of the town. *Held:* Plaintiffs having
failed to make protest and having accepted the benefits of the aid obtained in the construction of the municipal building, are estopped from
maintaining this action to restrain the collection of the taxes.

APPEAL by plaintiffs from *Harris, J.,* 5 December, 1940, at Hertford,
N. C. From HYDE. Affirmed.

The judgment of the court below is as follows:

"This cause was heard before the undersigned at Hertford, N. C., by
consent of the parties upon application of the plaintiffs for a permanent
injunction, restraining the collection of taxes which had been levied by
the Mayor and Board of Commissioners of the Town of Engelhard,
N. C., for the fiscal year 1939-1940, to provide funds with which to pay
a note which the Town had issued in anticipation of said taxes and for
the operating expenses of the Town during the fiscal year. The Court
finds the following facts:—

"In 1913, the Town of Engelhard, N. C., was incorporated by acts of
The General Assembly of North Carolina, Chapter 48 of the Private
Laws of 1913, and Chapter 15, Extra Session of Private Laws of 1913.
The Mayor and Board of Commissioners were named in the statute an
those who were named qualified as Mayor and members of the Board of
Commissioners, and performed their duties for some time. In 1915, an
election was called, but no voters presented themselves for the purpose
of voting for Mayor and members of the Board of Commissioners, and
thereafter said Mayor and members of the Board of Commissioners
therein performed none of the functions of their offices until the year
1939. Two of the members of the Board of Commissioners died during
that time and the Mayor, Closs Gibbs, was elected and qualified in 1927,
as a member of the General Assembly of North Carolina. R. S. Spencer,

one of the Commissioners named in the bill incorporating the Town, after qualifying as a member of the Board of Commissioners of the Town of Engelhard, was elected and qualified as a member of the Local School Committee for the Engelhard district.

"No election had been held for the purpose of electing a Mayor and the members of the Board of Commissioners for the Town of Engelhard since 1915, until this date.

"In 1939, a large number of the citizens and taxpayers of the corporation of Engelhard petitioned Closs Gibbs, Mayor, and the remaining living members of the Board of Commissioners, to reorganize the town government and to petition the WPA for a grant of money to aid in the building of a municipal building or Town Hall and also petitioned the said officers to levy such taxes as might be necessary to supplement the sum to be received from the WPA in order to provide an adequate municipal building. Among the petitioners were some of the plaintiffs in this action. The matter received much public discussion and the contemplated action was known by all of the citizens of the Town of Engelhard. Acting upon such petition, Closs Gibbs, as Mayor, and R. S. Spencer and S. S. Neal held a formal meeting and levied the tax sought to be enforced and thereafter elected I. B. Watson and George C. Brown as Commissioners to fill the place of the two who had died, to-wit: George E. Roper and Guy Guthrie. The Board of Commissioners then proceeded to elect the Town Officers, to-wit: Constable, Tax Collector, Town Clerk, and Financial Officer.

"(Prior to the organization meeting, the Mayor and members of the Board of Commissioners had caused the Local Government Commissioner in Raleigh to be interviewed with respect to the legality of their contemplated action and were advised that a municipal building was a necessary expense and that the Mayor and living members of the Board had the legal right to reorganize and issue the town's note in anticipation of the collection of the tax to provide a part of the funds for constructing such a building.) To the foregoing portion of the judgment in parentheses, constituting a finding of fact, plaintiffs excepted and assigned error.

"(Having reorganized and having elected commissioners to succeed those who had died, application was made to the WPA for a grant of money to assist in the construction of said municipal building. The WPA granted the sum of approximately $2,900.00. Hyde County donated by way of material and labor, approximately $700.00. Various individuals donated materials and labor so that the cost to the Town of Engelhard was about $1,200 in actual money.) To the foregoing portion of the judgment in parentheses, constituting a finding of fact, the plaintiffs excepted, and assigned error.

"In August, 1939, at a meeting attended by Gibbs, Neal and Spencer, a budget was passed as follows:

"For Building Supplies necessary for proposed Municipal
 Building ........................................ ..................................... ...... ....$700.00
 For Purchase of Lot for Site of Municipal Building ..... 250.00
 For necessary Expense and Current Expenses.......... ...... 125.00

"At said meeting a list of all property in the Town of Engelhard was presented, amounting to a total of $157,188.00. At said meeting, motion was made and unanimously carried that an *ad valorem* tax of one-half of one per cent on the $100.00 valuation be levied and a poll tax of $1.50 on each taxable poll also be levied for the purpose of meeting the budget adopted at said meeting. Notices of the budget and the tax levy as above set out were posted in conspicuous places in the Town of Engelhard.

"(Thereafter, the WPA furnished to the Town of Engelhard the sum it had agreed to furnish. Hyde County furnished approximately $700.00 in material and labor which went into the construction of said building, and various individuals contributed material and labor. It became necessary for the collection of the 1939 tax as levied. Application for permission to issue this note was made to the Local Government Commission and notice of such application was printed in *Hyde County Herald,* as provided by law, and at the time fixed for the sale, sold the same to the Engelhard Banking & Trust Company for par and accrued interest. Said bank paid for said note and is now the owner thereof. Said note was in the form prescribed by the Local Government Commission and was executed by Closs Gibbs, as Mayor, and I. B. Watson as Town Clerk, and was approved by O. I. Williams, Attorney for the Town of Engelhard.) To the foregoing portion of the judgment in parentheses, constituting a finding of fact, plaintiffs excepted and assigned error.

"The construction of the municipal building was begun in the latter part of 1939, and was completed in the late summer of 1940, and was erected on a lot purchased for the use of the Town of Engelhard, deed for which is held in escrow by the Engelhard Banking and Trust Company to be delivered to the Town of Engelhard upon such payment of the purchase price.

"Prior to the tax levy made in August, 1939, the Town of Engelhard did not owe any money whatsoever and there were no expenses to be incurred by said Town until after the reorganization in August, 1939. (Said building is now completed, and serves a useful purpose in housing fire equipment, furnishing to the Town of Engelhard office rooms for its officers, and providing an auditorium for the use of such purposes as

municipal buildings are usually used for.) To the foregoing portion of the judgment in parentheses, constituting a finding of fact, plaintiffs excepted and assigned error.

"(All the citizens of the Town of Engelhard, particularly the plaintiffs in this action, had full knowledge that the Mayor and Board of Commissioners were reorganizing the Town Government; they knew that said officers were holding meetings in response to the petition of the citizens of the town; knew that they had made application to WPA for a grant of money for the purpose of assisting in the construction of said municipal building and also knew that a part of the cost thereof was to be paid from the proceeds of a tax levy made in August, 1939; they knew that said levy had been made. They knew that the Mayor and Board of Commissioners of the Town of Engelhard had applied to the County Government Commission for permission to issue the town's note in the sum of $450.00, and later knew that permission had been given to issue such note and knew that the sale thereof was advertised by public notice as required by law; they knew when said note was being sold, and knew that the Engelhard Banking & Trust Company had purchased the same and had lent its money to the Town of Engelhard based on its faith in the legality of said note, and the legality of the tax which had been levied to pay it. During all the time of the reorganization of the town government, the levying of the tax, advertising and selling the town's note and the actual construction of the building, they had full knowledge of each and every step taken and no protest was ever made by any one of them against any act taken by the Mayor and Board of Commissioners in respect to the levying of the tax, the borrowing of the money, or the construction of the building. They also knew that during the spring and summer of 1939, a large number of the citizens and taxpayers of the town were paying the tax levied against them by the Mayor and Board of Commissioners, to-wit: at least two-thirds of said citizens and taxpayers. They knew that the WPA had granted approximately $2,000.00 which was being used in the construction of the Municipal Building; they knew that Hyde County had appropriated about $700.00 in labor and material, which was being used in the construction of the building, and that various individuals were also contributing labor and material for such purpose.) To the foregoing portion of the judgment in parentheses, constituting a finding of fact, plaintiffs excepted and assigned error.

"(Upon the foregoing facts, it is ordered, adjudged and decreed that the restraining order heretofore issued in this cause by Honorable C. E. Thompson, Superior Court Judge, on September 4, 1940, be, and the same hereby is dissolved.) To the foregoing adjudication plaintiffs excepted and assigned error. This December 5, 1940. W. C. Harris, Superior Court Judge."

From the above judgment plaintiffs appealed to the Supreme Court.

*Rodman & Rodman for plaintiffs.*
*Carter & Carter and O. L. Williams for defendants.*

CLARKSON, J. This is an action brought by plaintiffs, residing in the town of Engelhard, against defendants to restrain them from levying a certain tax which plaintiffs contend is illegal and void. That they owed no tax and the levy "would cast a cloud upon their title." The court below found the facts and rendered judgment in favor of defendants, dissolving the restraining order. The record imports verity. None of the exceptions and assignments of error set forth in the judgment of the court below, made by plaintiffs, can be sustained on the facts found. We therefore think the judgment is correct. It will be noted that the cause was heard "by consent of the parties."

N. C. Code, 1939 (Michie), sec. 556, is as follows: "An issue of law must be tried by the judge or court, unless it is referred. An issue of fact must be tried by a jury, unless a trial by jury is waived on a reference ordered. Every other issue is triable by the court, or judge, who, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury, or may refer it."

Sec. 569: "Upon trial of an issue of fact by the court, its decision shall be given in writing, and shall contain a statement of the fact found, and the conclusions of law separately. Upon trial of an issue of law, the decision shall be made in the same manner, stating the conclusions of law. Such decision must be filed with the clerk during the court at which the trial takes place, and judgment upon it shall be entered accordingly."

The learned and efficient judge in the court below found the facts and his conclusions of law, in accordance with the statutes, *supra,* and dissolved the restraining order. *Ins. Co. v. Carolina Beach,* 216 N. C., 778 (788-9).

The court below found: *"All the citizens* of the Town of Engelhard, particularly the plaintiffs in this action, had full knowledge that the Mayor and Board of Commissioners were reorganizing the Town Government; they knew that said officers were holding meetings in response to the petition of the citizens of the town; knew that they had made application to WPA for a grant of money for the purpose of assisting in the construction of said municipal building and also knew that a part of the cost thereof was to be paid from the proceeds of a tax levy made in August, 1939; they knew that said levy had been made," etc.

In *Smith v. Carolina Beach,* 206 N. C., 834 (836-7), *Brogden, J.,* speaking for the Court, said: "What is a *de facto* municipal officer?

A comprehensive definition of the term is found in *Waite v. Santa Cruz,* 184 U. S., 302, 46 L. Ed., 552, and is in the following language: 'A *de facto* officer may be defined as one whose title is not good in law, but who is in fact in the unobstructed possession of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intruder or usurper. When a person is found thus openly in the occupation of a public office, and discharging its duties, third persons having occasion to deal with him in his capacity as such officer are not required to investigate his title, but may safely act upon the assumption that he is a rightful officer.' The same general idea has been expressed by this Court, speaking through *S. v. Lewis,* 107 N. C., 967, 12 S. E., 457, as follows: 'An officer *de facto* is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised. . . . under color of an election or appointment, by or pursuant to a public unconstitutional law, before the same is adjudged to be such.' See, also, *Van Amringe v. Taylor,* 108 N. C., 196, 12 S. E., 1005; *Hughes v. Long,* 119 N. C., 52, 25 S. E., 743; *Rodwell v. Rowland,* 137 N. C., 617, 50 S. E., 319; *Whitehead v. Pittman,* 165 N. C., 89, 80 S. E., 976; *Markham v. Simpson,* 175 N. C., 135, 95 S. E., 106."

In 22 R. C. L., sec. 306, p. 588, it is said: "Lord Ellenborough has defined an officer *de facto* as one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law, and this definition has been quoted with approval in many cases. Another and more comprehensive definition is as follows: A person is a *de facto* officer where the duties of the office are exercised: 'First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. Fourth, under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.' And this has been widely accepted."

The court below further found: "During all the time of the reorganization of the town government, the levying of the tax, advertising and

selling the town's note and the actual construction of the building, they had full knowledge of each and every step taken and no protest was ever made by any one of them against any act taken by the Mayor and Board of Commissioners in respect to the levying of the tax, the borrowing of the money or the construction of the building."

It will be noted in the finding of facts above set forth "They had full knowledge of each and every step taken." We think plaintiffs are estopped by their conduct to make the contention here made.

In *R. R. v. Lassiter & Co.*, 207 N. C., 408 (415), speaking to the subject: "The law is as follows, as stated in *R. R. v. Kitchin*, 91 N. C., 39 (44): 'Where one of two persons must suffer loss by the fraud or misconduct of a third person, he who first reposes the confidence, or by his negligent conduct made it possible for the loss to occur, must bear the loss.' *Barnes v. Lewis*, 73 N. C., 138; *Vass v. Riddick*, 89 N. C., 6; *Bank v. Liles*, 197 N. C., 413 (418); *Bank v. Clark*, 198 N. C., 169 (173); *Lightner v. Knights of King Solomon*, 199 N. C., 525 (528)." *Warehouse Co. v. Bank*, 216 N. C., 246 (254).

It appears from the findings of fact, argument and brief of defendants that "Engelhard is a thriving community and the building which has been constructed was badly needed. It houses the fire equipment for the town, furnishes necessary offices, and an auditorium for community activities. Its need was felt by all the citizens, including the plaintiffs. They were willing that the building be built and that the Government and the County of Hyde furnish its money for such purpose. Yet they voice objection only when it came to paying the taxes which had been levied against them. They are willing to accept the benefits which they have obtained from this building and ought to now be made to pay their proper part of the expenses."

For the reasons given, the judgment of the court below is

Affirmed.