J. C. IDOL, JAMES DILLON, ORA PARNELL, H. C. PEDDYCORD AND F. E. ELLIOTT AND ALL OTHER PERSONS IN FORSYTH COUNTY OR IN THE STATE OF NORTH CAROLINA SIMILARLY SITUATED, v. DR. C. A. STREET, DR. GEO. T. HARRELL, JR., DR. J. R. BENDER, ROY CRAFT, REV. KENNETH WILLIAMS, SAM REED, DR. FRED G. PEGG, E. G. SHORE, SHERIFF OF FORSYTH COUNTY, AND JOHN M. GOLD, CHIEF OF POLICE OF WINSTON-SALEM, NORTH CAROLINA.

(Filed 7 June, 1951.)

1. **Statutes § 2: Health § 2—**

A statute which operates only in one county and its county seat and which confers power upon the county and the city to consolidate their health departments and name a joint city-county board of health and appoint joint city-county health officers, and which expressly repeals to the extent of any conflict all laws in conflict therewith, is a local act relating to health, and is void for repugnancy to Art. II, sec. 29, of the State Constitution.

2. **Statutes § 6: Health § 2—**

An unconstitutional act is void and is as inoperative as though it had never been passed, and therefore where a city-county board of health is created under a local statute which is unconstitutional because repugnant to provisions of Art. II, sec. 29, of the State Constitution, such city-county board never comes into legal existence, and health ordinances promulgated by it are without validity.

3. **Public Officers § 5a—**

It is necessary that a person be an incumbent of a *de jure* office in order to be even a *de facto* officer, and where the act creating the office is void, the incumbent of such office is not a *de facto* officer, and his acts may be collaterally attacked.

APPEAL by plaintiffs from *Moore, J.*, at the September Term, 1950, of FORSYTH.

Civil action for a declaratory judgment adjudging the invalidity of an ordinance regulating the sale of milk, and for an injunction enjoining the enforcement of such ordinance. pending the final hearing.

Acting under Chapter 86 of the 1945 Session Laws of North Carolina, the Board of Aldermen of the City of Winston-Salem and the Board of Commissioners of the County of Forsyth consolidated their respective public health agencies and departments; named the defendants, Dr. C. A. Street, Dr. George T. Harrell, Jr., Dr. J. R. Bender, Roy Craft, Rev. Kenneth Williams, and Sam Reed, as the joint City-County Board of Health for the City of Winston-Salem and the County of Forsyth; and appointed the defendant, Dr. Fred G. Pegg, as joint City-County Health Officer for the City of Winston-Salem and the County of Forsyth. The

defendant, E. G. Shore, is the Sheriff of Forsyth County, and the defendant, John M. Gold, is the Chief of Police of the City of Winston-Salem.

On 16 February, 1950, the joint City-County Board of Health for the City of Winston-Salem and the County of Forsyth adopted a voluminous ordinance regulating the production of milk for sale in Winston-Salem and Forsyth County; banning the sale of all milk, except Grade A pasteurized milk, in Winston-Salem and Forsyth County on and after 16 August, 1950; and declaring that "every violation of the provisions of this ordinance shall constitute a separate offense" punishable by a fine not exceeding fifty dollars.

On 12 August, 1950, the plaintiffs, who are dairymen engaged in producing milk for sale in Winston-Salem and Forsyth County, brought this action against the defendants seeking a final judgment declaring the ordinance to be invalid and asking that the defendants be enjoined from enforcing it pending the final hearing. The complaint alleges in substance that the ordinance is void because it is unreasonable and because the joint City-County Board of Health was without constitutional or legal authority to adopt it; that the defendants are threatening to enforce the ordinance against the plaintiffs; and that the threatened acts of the defendants will cause irreparable damage to the property rights of the plaintiffs. The defendants answered, alleging the ordinance to be reasonable and valid.

A temporary restraining order was issued on the *ex parte* application of the plaintiffs. On the return day, Judge Moore heard the evidence submitted by the parties; concluded as matters of law that "the City-County Board of Health for the City of Winston-Salem and Forsyth County, if not a *de jure* board, was at least a *de facto* board "with lawful authority to adopt the ordinance in question, and that the ordinance was reasonable; and entered a judgment dissolving the temporary restraining order, denying the relief sought by the plaintiffs, and dismissing the action. The plaintiffs excepted and appealed, assigning errors.

*Buford T. Henderson for plaintiffs, appellants.*
*Womble, Carlyle, Martin & Sandridge for defendants, appellees.*

ERVIN, J. The ordinance under attack was adopted by the City-County Board of Health for the City of Winston-Salem and the County of Forsyth, which was created under Chapter 86 of the 1945 Session Laws of North Carolina. Hence, this question arises at the threshold of the appeal: Is Chapter 86 of the 1945 Session Laws repugnant to the provision of Article II, Section 29, of the North Carolina Constitution, which forbids the General Assembly to "pass any local, private, or special act

or resolution . . . relating to health, sanitation, and the abatement of nuisances"?

The organic law of the State was originally drafted and promulgated by a convention which met at Halifax in December, 1776. During the ensuing 140 years, the Legislature of North Carolina possessed virtually unlimited constitutional power to enact local, private, and special statutes. This legislative power was exercised with much liberality, and produced a plethora of local, private, and special enactments. As an inevitable consequence, the law of the State was frequently one thing in one locality, and quite different things in other localities. To minimize the resultant confusion, the people of North Carolina amended their Constitution at the general election of 1916 so as to deprive their Legislature of the power to enact local, private, or special acts or resolutions relating to many of the most common subjects of legislation.

The amendment is embodied in Article II, Section 29, of the State Constitution, and is couched in this language: "The General Assembly shall not pass any local, private, or special act or resolution relating to the establishment of courts inferior to the Superior Court; relating to the appointment of justices of the peace; relating to health, sanitation, and the abatement of nuisances; changing the names of cities, towns, and townships; authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys; relating to ferries or bridges; relating to non-navigable streams; relating to cemeteries; relating to the pay of jurors; erecting new townships, or changing township lines, or establishing or changing the lines of school districts; remitting fines, penalties, and forfeitures, or refunding moneys legally paid into the public treasury; regulating labor, trade, mining, or manufacturing; extending the time for the assessment or collection of taxes or otherwise relieving any collector of taxes from the due performance of his official duties or his sureties from liability; giving effect to informal wills and deeds; nor shall the General Assembly enact any such local, private, or special act by the partial repeal of a general law, but the General Assembly may at any time repeal local, private, or special laws enacted by it. Any local, private, or special act or resolution passed in violation of the provisions of this section shall be void. The General Assembly shall have power to pass general laws regulating matters set out in this section."

In thus amending their organic law, the people were motivated by the desire that the General Assembly should legislate for North Carolina in respect to the subjects specified as a single united commonwealth rather than as a conglomeration of innumerable discordant communities. To prevent this laudable desire from degenerating into a mere pious hope, they decreed in emphatic and express terms that "any local, private, or special act or resolution passed in violation of the provisions of this sec-

tion shall be void," no matter how praiseworthy or wise such local, private, or special act or resolution may be.

A "local act" is one operating only in a limited territory or specified locality. *S. v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521. It cannot be gainsaid, therefore, that Chapter 86 of the 1945 Session Laws is a local act, for it operates only in Forsyth County and its county seat, the City of Winston-Salem.

Chapter 86 of the 1945 Session Laws of North Carolina undertakes to confer power upon the Board of Aldermen of the City of Winston-Salem and the Board of Commissioners of Forsyth County to do these things through joint action: (1) To consolidate their respective public health agencies and departments; (2) to name a joint city-county board of health for regulating the public health interests of Winston-Salem and Forsyth County; and (3) to appoint a joint city-county health officer for administering public health laws and regulations in Winston-Salem and Forsyth County. Moreover, Chapter 86 of the 1945 Session Laws expressly declares that "all laws and clauses of laws . . . in conflict with this act are hereby repealed to the extent of such conflict," and in that way attempts to abrogate as to Winston-Salem and Forsyth County only various provisions of general state-wide statutes creating county boards of health, authorizing county boards of health and the authorities of municipalities to regulate public health interests in their respective counties and municipalities, and requiring the separate election of county and municipal health officers. See: Articles 3 and 5 of Chapter 130 of the General Statutes.

These things being true, it is clear beyond peradventure that Chapter 86 of the 1945 Session Laws is a local act relating to health. It necessarily follows that it is void for repugnancy to Article II, Section 29, of the State Constitution, no matter how praiseworthy or wise its provisions may be. *Board of Health v. Comrs. of Nash,* 220 N.C. 140, 16 S.E. 2d 667; *Sams v. Comrs. of Madison,* 217 N.C. 284, 7 S.E. 2d 540.

Inasmuch as the statute purporting to create their offices is unconstitutional, the members of the City-County Board of Health for the City of Winston-Salem and the County of Forsyth were not lawful officers at the time of the adoption of the ordinance in question.

The defendants assert, however, that the judgment dismissing the action must be upheld even if Chapter 86 of the 1945 Session Laws does offend Article II, Section 29, of the North Carolina Constitution. They argue on this phase of the case that the members of the City-County Board of Health were at least *de facto* officers at the time of the adoption of the ordinance, and that in consequence the ordinance is binding upon the plaintiffs and the public.

This contention raises this question: Where the Legislature undertakes to create a public office by an unconstitutional statute, is the incumbent of such office an officer *de facto?*

This query must be answered in the negative for the very simple reason that there can be no officer, either *de jure* or *de facto,* unless there is a legally existing office to be filled. *In re Wingler,* 231 N.C. 560, 58 S.E. 2d 372; *S. v. Shuford,* 128 N.C. 588, 38 S.E. 808.

The argument now advanced by the defendants was put forward in the case of *Norton v. Shelby County,* 118 U.S. 425, 30 L. Ed. 178, 6 S. Ct. 1121, and was rejected by the Supreme Court of the United States with this unanswerable observation: "An unconstitutional Act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."

As Chapter 86 of the 1945 Session Laws is void, the offices it undertook to create never came into existence. In consequence, the members of the City-County Board of Health for the City of Winston-Salem and the County of Forsyth were not officers *de facto,* and the ordinance in controversy is without validity. *King Lumber Co. v. Crow,* 155 Ala. 504, 46 So. 646, 130 Am. S. R. 65; *People v. Toal,* 85 Cal. 333, 24 P. 603; *In re Allison,* 13 Colo. 525, 22 P. 820, 10 L.R.A. 790, 16 Am. S. R. 224; *State v. Malcom,* 39 Idaho 185, 226 P. 1083; *People ex rel. Stuckart v. Knopf,* 183 Ill. 410, 56 N.E. 155; *Hildreth v. McEntire,* 1 J. J. Marsh (Ky.) 206, 19 Am. D. 61; *Board of Public Utilities v. New Orleans R. & Light Co.,* 145 La. 308, 82 So. 280; *People ex rel. Sinkler v. Terry,* 42 Hun. (N.Y.), 273, reversed on other grounds in 108 N.Y. 1, 14 N.E. 815; *Farrington v. New England Invest. Co.,* 1 N.D. 113, 45 N.W. 191; *Coyne v. State,* 22 Ohio App. 462, 153 N.E. 876; *Koch v. Keen,* 124 Okla. 270, 255 P. 690; *Davis v. Williams,* 158 Tenn. 34, 12 S.W. 2d 532; *State v. Gillette's Estate* (Tex. Com. App.), 10 S.W. 2d 984; *Ex Parte Bassitt,* 90 Va. 679, 19 S.E. 453; *Fanelon v. Butls,* 49 Wis. 342, 5 N.W. 784; *Van Slyke v. Trempealeau County Farmers' Mut. F. Ins. Co.,* 39 Wisc. 390, 20 Am. R. 50.

The able judge who heard this case in the court below was evidently misled into error by a misconstruction of the fourth classification of officers *de facto* made by *Chief Justice Butler* of the Supreme Court of Connecticut in the leading case of *State v. Carroll,* 38 Conn. 449, 9 Am. R. 407, which has been quoted in these North Carolina decisions: *Berry v. Payne,* 219 N.C. 171, 13 S.E. 2d 217; *Smith v. Carolina Beach,* 206 N.C. 834, 175 S.E. 313; and *S. v. Lewis,* 107 N.C. 967, 12 S.E. 457, 13 S.E. 247, 11 L.R.A. 100.

According to *Chief Justice Butler,* officers *de facto* fall into four categories. He describes the fourth group as follows: "An officer *de facto*

is one whose acts, though not those of a lawful officer, the law, upon prin-
ciples of policy and justice, will hold valid, so far as they involve the
interests of the public and third persons, where the duties of *the office*
were exercised . . . (4) under color of an election or appointment by or
pursuant to a public unconstitutional law before the same is adjudged
to be such." (Italics added to the words "the office" by the writer of
this opinion.)

The precise meaning of *Chief Justice Butler's* words is laid bare by
this illuminating comment of the Supreme Court of the United States
in *Norton v. Shelby County, supra:* "Of the great number of cases cited
by the *Chief Justice* none recognizes such a thing as a *de facto* office, or
speaks of a person as a *de facto* officer, except when he is the incumbent
of a *de jure* office. The fourth head refers not to the unconstitutionality
of the Act creating the office, but to the unconstitutionality of the Act by
which the officer is appointed to an office legally existing." And therein
lies the explanation for the decision in *Smith v. Carolina Beach, supra.*

For the reasons given, the judgment dismissing the action is reversed
and the cause is remanded to the Superior Court of Forsyth County for
further proceedings not inconsistent with this opinion.

Judgment reversed.