STATE EX REL. S. B. SPRUILL v. W. M. BATEMAN.

(Filed 26 March, 1913.)

1. Elections—Public Offices—Disqualifications to Office—Next Highest in Votes—Vacancy in Office—Appointive Power.

The one receiving the next highest number of votes for a public office at an election held by the people, is not elected to fill that office because of the ineligibility of the one receiving the highest number.

S. *v.* BATEMAN.

2. Public Offices — Qualifications—Constitutional Law—Legislative Powers—Recorders' Courts—Attorney.

The Constitution of North Carolina, Art. VI, provides who shall be voters, and by section 7 thereof, that "every voter in North Carolina, except in this article disqualified, shall be eligible to office," and the Legislature cannot add to the constitutional disqualifications to hold office by requiring candidates for the position of recorder in a municipal court to be "a licensed attorney at law." The difference between an "assurance" and a "qualification" to office pointed out and discussed by CLARK, C. J.

APPEAL by defendant from *Long, J.,* at February Term, 1913, of WASHINGTON.

*W. M. Bond, W. M. Bond, Jr., Ward & Grimes for relator.*
*A. D. McLean for defendant.*

CLARK, C. J. At the election in November, 1912, Bateman was elected by the people of Washington County recorder of the "Recorder's Court of Plymouth," which was created by chapter 343, Public-Local Laws 1911. Section 2 of said act prescribes that said recorder shall be "a qualified voter of Washington County and a man of good moral character and a licensed attorney at law." The defendant does not hold a license to practice law, and by this proceeding the relator seeks to oust him from the office on that ground, and to have himself inducted upon the ground that Bateman not having all the qualifications prescribed by that act, that the votes cast for him are to be disregarded and that therefore the relator, who received the next highest vote, is entitled to the office.

Taking up the second proposition first, Bateman having received the largest number of votes, Spruill was not elected. If Bateman is disqualified to act, there must be a resort to the process of filling the office, in case of a vacancy, as provided by section 16 of said act. When the candidate receiving the highest vote is ineligible, that cannot make his opponent, who has been rejected by them, the choice of the people.

In Throop on Public Officers, sec. 163, it is held: "In this country the great current of authorities sustains the doctrine

that the ineligibility of the majority candidate does not elect the minority candidate. And this without reference to the question whether the voters knew of the ineligibility of the candidate for whom they voted. It is considered that in such a case the votes for the ineligible candidate are not void."

In Mechem Public Officers, sec. 206, it is said that the doctrine in the United States, "supported by an undoubted preponderance of authority, is that the candidate receiving the highest number of votes may, because of his ineligibility, fail of election, yet the votes cast for him are so effectual as to prevent the election of other candidates, and there is no election at all." This is supported by numerous citations there given. Without citing them, it is sufficient to say that they hold that a candidate who receives fewer votes than are received by some other candidate cannot be said, under any circumstances, to be elected.

In 15 Cyc., 391, the point is thus clearly stated with abundant citation of authority: "According to the English rule, if a candidate who receives the highest number of votes is ineligible, and the electors had sufficient notice of his ineligibility at the time of voting for him, their votes are thrown away, and the candidate having the next highest number of votes, if he is eligible, must be declared elected; and in one American jurisdiction (Indiana) the English rule has been adopted. But it is a fundamental idea in American politics that the majority shall rule, and that no person can be elected to office unless he shall receive a majority, or at least a plurality, of all the votes. It has accordingly been settled by the House of Representatives of the United States that the ineligibility of the candidate receiving the highest number of votes gives no title to the candidate receiving the next highest number, even though the election was held in a State where the contrary rule obtains. The same rule has been adopted by the United States Senate and has the support of the great weight of judicial authority in the United States. It may be well to add, in this connection, that it is not within the power of a State to add to the qualifications prescribed for Representatives in Congress and Senators of the

United States by the Constitution of the United States so as to render ineligible candidates who would otherwise be eligible under the Federal Constitution."

To same effect *Com. v. Cluley,* Brightley on Elections, 144; *s. c.,* 56 Pa. St., 270. It has also been the settled practice as to contested elections in the General Assembly of this State that when the candidate receiving the majority vote has been found ineligible, the minority candidate has not been seated, but a new election has been ordered.

The English rule was formerly as above stated. When John Wilkes, the celebrated "Agitator," after being three times denied his seat in Parliament and expelled, was promptly a fourth time elected by the voters of Middlesex, Parliament ventured to seat his opponent, Col. Luttrell, who had received a minority. The storm of indignation that swept through the Kingdom came near to becoming a Revolution, and to Wilkes' consequent popularity we owe the fact that a great county in this State bears his name.

As to the other question: The Constitution of this State, Art. VI, prescribes who shall be "voters," and section 7 of that article provides: *"Every voter* in North Carolina, except as in this article disqualified, shall be eligible to office." The Legislature is therefore forbidden by the organic instrument to disqualify any voter, not disqualified by that article, from holding any office. The General Assembly cannot render any "voter" ineligible for office by exacting any additional qualifications, as by prescribing, in this instance, that the candidate shall be "a licensed attorney at law," any more than it could prescribe that he should own a specified quantity of property, or should be of a certain age, or race, or religious belief, or possess any other qualification not required to make him a voter.

It is true that where a Constitution provides that "no person shall be elected or appointed to any office unless he possesses the qualification of an elector," the Legislature can prescribe additional qualifications. 29 Cyc., 1376, and cases there cited. The reason is that where the Constitution requires only that the candidate shall be a voter, the Legislature can add additional

qualifications, providing only the candidate is a voter; but our Constitution is just the reverse of this. It provides that *"Every voter"* (unless as in this article disqualified) shall be *eligible to office."* It may be, therefore, that the General Assembly of this State could make eligible to office those who are not voters, as to which we express no opinion. The Constitution contains no prohibition, in terms, as to this. But it does forbid the disqualification of "any voter" for office, for it says that *"every* voter" is eligible to "office," which takes in every office.

The purpose of this peculiar phraseology in the North Carolina Constitution is well known by every one. A newly emancipated element had been admitted to suffrage, and it was rightly anticipated that at some future day there might be a majority in the General Assembly unfavorable to their holding office, so the provision was made that "every voter," except as disqualified by the Constitution, should be eligible "to office." The broadest word is used, showing that the eligibility was to any and every office.

The convention that formed the Constitution seems to have had the most implicit faith that the people were competent to select their own officers, and therefore Article VI imposes no disqualifications upon voters except those named in section 8 of that article. The Amendment of 1900, while imposing some restriction upon suffrage, left intact the provision that all who continued to be "voters" remained eligible to office. Indeed, the Constitution does not require even that judges of the Supreme and Superior Courts shall be "licensed attorneys at law," presuming that the people would select those who are competent for such positions. It would be strange indeed if the General Assembly could add this restriction in the selection of this recorder, which office is now filled in North Carolina by many most competent men who are not lawyers, when the organic instrument does not require that the members of the Supreme and Superior Courts shall possess any other qualification than that of being voters. Neither does the United States Constitution nor any act of Congress require such qualification for Federal judges.

In *Lee v. Dunn,* 73 N. C., 595, this subject was fully gone into, and it was held that the General Assembly could not impose any additional qualification upon eligibility to office other than that the officer should be a voter as required by Constitution, Art. VI, sec. 7, above quoted, but a mere *assurance* for the faithful discharge of the duties of the office, such as a bond to answer for money intrusted to his care, and, when an official has been in office already, a receipt for the money paid over as evidence of his integrity is not an added "qualification." The Court goes on to say that even the requirement of an oath by the Constitution itself does not affect eligibility, because that is required after election, and is only an assurance that the officer will faithfully discharge the duties of the office. The Court added that any legislation which directly or indirectly denies or abridges the right of a citizen to vote as specified in the Constitution is invalid, and that "what is true of the right to vote is also true of the right to hold office." Brightly on Elections, 44; *s. c.,* 59 Pa. St., 109. Whoever is entitled under our Constitution to vote is entitled to hold office, except where restricted by that instrument. The constitutional provision in these matters cannot be abridged by requiring any qualifications whatever in addition to those set out in the Constitution. A requirement that a man shall be a lawyer is not an "assurance" like a bond, but additional "qualification."

The requirements as to age of certain officers, and the disqualification of the Governor for reëlection are in the Constitution and cannot be changed, nor applied to other officers, by the Legislature. The ordinary provision that election officers shall not be all of the same political party is not an additional "qualification," but a mere regulation or "assurance" as recognized in *Lee v. Dunn.* Besides, it may well be that such positions are not "offices," but mere "places of trust or of profit" whose qualifications may be prescribed by legislation. But as to this last point we need not now decide. The Constitution recognizes the clear distinction between "offices" (Art. VI, sec. 7) and "places of trust or of profit" (Art. XIV, sec. 7). *Worthy v. Barrett,* 63 N. C., 199; *Doyle v. Raleigh,* 89 N. C., 136. But

162—38

the line has not been clearly marked, and we are not called upon to do so in this case, for it is clear that the recorder's position is an office.

It follows, therefore, (1) That the defendant, a duly qualified voter of Washington County, was eligible to the office of recorder and is entitled to fill it; having received the majority of the votes of the electors of that county. (2) That having received a majority of the votes cast, even if he were ousted because ineligible, the relator would not be entitled to be inducted into office, but the vacancy would be filled in the manner prescribed by the act creating the court.

Reversed.

WALKER and ALLEN, JJ., concurring in result.