JOHN D. ELLIOTT v. ROANOKE RAILROAD AND LUMBER COMPANY.

(Filed 22 September, 1915.)

1. **Trespass—Title—Burden of Proof.**

   The weakness of the defendant's title to land will not avail the plaintiff in an action of trespass involving title, for he must recover, if at all, upon the strength of his own title.

2. **Same—State Grants—Deeds and Conveyances—Color—Plaintiff's Evidence.**

   Where the plaintiff's own evidence, in an action of trespass on lands involving title, tends to show sufficient adverse possession of the defendant under color to take the title out of the State and ripen it in defendant, or in one under whom he claims, and the plaintiff is claiming the *locus in quo* by grant from the State, issued after the title had ripened, he cannot recover.

APPEAL by plaintiff from *Justice, J.,* at February Term, 1915, of BEAUFORT.

Civil action for trespass on land.

*Daniel & Warren and Bryan & Stewart for plaintiff.*
*Small, McLean, Bragaw & Rodman for defendants.*

WALKER, J.  Plaintiff alleged ownership, under a grant from the State to himself, of a tract of land containing 74 acres, more or less, on the north side of Pamlico River and the west side of Bath Creek and designated on the court map by the figures 1, 2, 3, 4, 5, and back to 1, and on which the trespass was alleged to have been committed by cutting timber.  Defendant denied plaintiff's title upon two grounds:

1. That it had acquired title to the land under a deed of Jesse C. Bryan to Thomas D. Beasley, dated 19 March, 1846, and a deed from James E. Shepherd, commissioner to sell the lands of the said Thomas D. Beasley, who had died, dated 2 June, 1882, and adverse possession under these deeds.  Plaintiff claimed that the line 2 to 5, as shown on the map, is the western boundary of the deed of Bryan to Beasley, while the defendant contended that its western boundary is the line B, C, 3.

2. There was a dispute between the parties as to whether the deed from Bryan to Beasley covered the *locus in quo,* but the defendant further contended that this was immaterial, as the plaintiff's own testimony, which defeats his recovery, was as follows:  "The Archbell land lies west of the Beasley land.  John Archbell and those claiming under him have been in possession of the land adjoining the Beasley land on the west ever since I have known it—fifty years or more.  Beasley and those claiming under him had been in possession of the Beasley land as long as I can recollect.  John B. Respass is the only man who has ever shown me the water oak, figure 5, as the Windley corner.  I live in about 2½ miles from the land in controversy and make no claim to any part of the land in there except that little piece covered by my entry.  The Kugler Lumber Company bought the timber on the John Archbell land, or Stickney land, as it was called.  The Archbell house stands within 100 yards of the mouth of Bath Creek.  The Beasley land is one of the oldest settlements in that neighborhood.  The cleared land on the William J. Archbell land is about a mile from this land."

There was evidence as to the possession of defendant, and those under whom it claimed, of the land covered by the deeds of James E. Shepherd, commissioner, and Bryan to Beasley; but it is not necessary to set it out, in the view we take of the case.  Judgment was entered for defendant, and plaintiff appealed.

It is well settled that plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of his adversary's title.  It was said in *Wicker v. Jones,* 159 N. C., at p. 116:  "The paintiff must recover upon the strengeth of his own title, and upon failure of proof by him the jury will find that he is not the owner of the land, although satisfied that the defendant has no title."  This is also true in an action

of trespass where plaintiff relies solely upon his title and constructive possession, and not upon his actual possession. *Waters v. Lumber Co.,* 154 N. C., 232. So, in this case, as plaintiff by his own evidence has shown that at the time the grant issued to him the State had no title, as it had been lost by adverse possession of Archbell, which was begun and continued for the requisite period of time, he failed to show any title to the land, and, therefore, no such constructive possession thereof as would entitle him to sue in trespass. His own testimony proves that the Beasleys were in possession of their land for many years—as long as he could recollect—and John Archbell and those claiming under him had been in possession of the land adjoining the Beasley land on the west ever since he had known it—fifty years or more. This being so, it can make no difference where the western line of the Beasley tract is, that is, whether it is where the plaintiff claims it is, or where the defendant claims it to be.

In this view of the evidence it would be useless to discuss the interesting question raised by the plaintiff, as to whether the possession of the defendant, and those under whom it claimed, was extended to the boundaries of the Shepherd deed, without actual possession of some part of the land embraced by that deed, and not covered by the deed of Bryan to Beasley, dated 19 March, 1846. The point being that as Thomas Beasley had already acquired title, under the Bryan deed as color, by adverse possession, which afterwards passed to defendant, his possession of that tract of land being rightful, would not be extended to the outer boundaries of the Shepherd deed by construction of law. The gist of the contention is that it is only where the possession has not ripened the color into a good title, and the occupant is still exposed to an action of trespass, that the law will extend the possession contructively to the boundaries of the deed under which, as color of title, the possession is held, citing for this position *Lewis v. Covington,* 130 N. C., 544. Nor is it needful to consider the status and legal effect of the grant from Lords Proprietors to Seth Sothell, dated 10 November, 1681, for the land in controversy. It is quite sufficient, in order to dispose fully of this appeal, that we confine ourselves to the single question as to the force and effect of the plaintiff's own testimony upon his right to recover, remarking generally, and without more particular reference thereto, that there are other obstructions in the way of plaintiff's recovery.

There was no error in the proceedings above, and it will be so certified.

No error.