CARL A. MOORE, PLAINTIFF v. KNIGHTDALE BOARD OF ELECTIONS, GENE ANTHONY, CHAIRMAN, JUDY JOHNSON AND DOROTHY PARRISH, MEMBERS, DEFENDANTS, AND NORTH CAROLINA STATE BOARD OF ELECTIONS; M. H. HOOD ELLIS, CHAIRMAN, GREG O. ALLEN, WILLIAM A. MARSH, RUTH TURNER, JUNE K. YOUNGBLOOD, MEMBERS, AND ALEX K. BROCK, EXECUTIVE SECRETARY-DIRECTOR, INTERVENING-DEFENDANTS, AND VERNON CHARLES BULLOCK, PLAINTIFF v. KNIGHTDALE BOARD OF ELECTIONS, GENE ANTHONY, CHAIRMAN, JUDY JOHNSON AND DOROTHY PARRISH, MEMBERS, DEFENDANTS

No. 480PA91

(Filed 24 February 1992)

**Elections § 60 (NCI4th)— "resign to run" statute—unconstitutional additional qualification for office**

The "resign to run" statute, N.C.G.S. § 163-125(a), which provides that "[n]o individual may qualify as a candidate for elective public office who holds another elective office . . . without resigning from such office," violates Art. VI, § 6 of the North Carolina Constitution by adding a qualification for election to office beyond those prescribed in the Constitution. Therefore, the Knightdale Board of Elections erred in refusing to allow plaintiffs to file for the office of mayor until they resigned their seats on the town council.

**Am Jur 2d, Elections § 175.**

1

MOORE v. KNIGHTDALE BD. OF ELECTIONS

[331 N.C. 1 (1992)]

ON discretionary review prior to determination by the Court of Appeals, pursuant to Rule 15(a) of the North Carolina Rules of Appellate Procedure and N.C.G.S. § 7A-31(b), of a judgment entered on 12 August 1991 by *Hight, J.*, in Superior Court, WAKE County, permanently enjoining and restraining the enforcement of N.C.G.S. § 163-125 with respect to plaintiffs. Heard in the Supreme Court 10 February 1992.

*Tharrington, Smith & Hargrove, by Michael Crowell, for plaintiff-appellee Carl A. Moore.*

*Hatch, Little & Bunn, by John D. Elvers, for plaintiff-appellee Vernon Charles Bullock.*

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Special Deputy Attorney General, for intervening defendant-appellants North Carolina State Board of Elections, et al.*

*S. Ellis Hankins, General Counsel, and Robert E. Hagemann, Assistant General Counsel, for North Carolina League of Municipalities, James B. Blackburn, III, General Counsel, for North Carolina Association of County Commissioners, and George T. Rogister, Jr., General Counsel, for North Carolina School Boards Association, amici curiae.*

WHICHARD, Justice.

Plaintiffs Carl A. Moore and Vernon Charles Bullock won election to the Knightdale Town Council in 1989 for terms to expire in 1993. More than forty days before the termination of their council terms both sought to become candidates for mayor of Knightdale, which office was scheduled to be filled by election on 5 November 1991. Pursuant to the authority of N.C.G.S. § 163-125, defendant, the Knightdale Board of Elections, refused to allow plaintiffs to file for the office of mayor until they resigned their seats on the council. Effective 1 January 1991, section 163-125(a) provides that:

> No individual may qualify as a candidate for elective public office who holds another elective office, whether State, district, county or municipal, more than 40 days of the term of which runs concurrently with the term of office for which he seeks to qualify without resigning from such office prior to the last day of qualifying for the office he intends to seek.

N.C.G.S. § 163-125(a) (1991).

## MOORE v. KNIGHTDALE BD. OF ELECTIONS

[331 N.C. 1 (1992)]

Plaintiff Moore filed suit on 29 July 1991 in Superior Court, Wake County, seeking a temporary restraining order, a preliminary injunction, and a permanent injunction prohibiting defendants from enforcing the provisions of N.C.G.S. § 163-125. The trial court issued a temporary restraining order on plaintiff Moore's behalf on 29 July 1991. On 6 August 1991, the North Carolina State Board of Elections filed both a motion to intervene and its accompanying answer to plaintiff's complaint. Plaintiff Moore did not object to the motion to intervene, and the trial court allowed the motion.

Plaintiff Bullock filed suit on 7 August 1991, alleging the same facts and seeking the same relief as plaintiff Moore. The trial court granted a temporary restraining order on behalf of plaintiff Bullock on 7 August 1991.

The trial court consolidated the two cases and heard the matter on 8 August 1991. On 12 August 1991, the court entered judgment for plaintiffs, concluding that N.C.G.S. § 163-125 violates Article VI, Section 6 of the North Carolina Constitution by adding a qualification for election to office. The court permanently enjoined and restrained defendants from enforcing the statute with respect to plaintiffs.

On 5 December 1991, this Court allowed the parties' joint petition for discretionary review prior to determination by the Court of Appeals. We address the identical question presented to the trial court—whether N.C.G.S. § 163-125(a) imposes an unconstitutional additional qualification for election to office. We conclude that it does, and we thus affirm the judgment of the trial court.

In support of the statute's constitutionality, the intervening defendant-appellant State Board of Elections (the State) argues that (1) the "resign to run" statute is entitled to the presumption of constitutionality afforded all legislative enactments, (2) the statute is not properly characterized as an additional qualification for election, and (3) the statute is a reasonable restriction on eligibility for candidacy like other legislation regulating elections that this Court has upheld.

The State correctly asserts that the statute is entitled to a presumption of constitutionality.

Since our earliest cases applying the power of judicial review under the Constitution of North Carolina, . . . we have indicated that great deference will be paid to acts of the

legislature—the agent of the people for enacting laws. This Court has always indicated that it will not lightly assume that an act of the legislature violates the will of the people of North Carolina as expressed by them in their Constitution and that we will find acts of the legislature repugnant to the Constitution only "if the repugnance do really exist and is plain."

*State ex rel. Martin v. Preston*, 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989) (quoting *Hoke v. Henderson*, 15 N.C. (4 Dev.) 1, 9 (1833)). As we said in *Preston*, it is "firmly established that our State Constitution is not a grant of power. All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution." *Id.* at 448-49, 385 S.E.2d at 478 (citation omitted).

The presumption of constitutionality is not, however, and should not be, conclusive.

[I]t is not only within the power, but . . . it is the duty, of the courts in proper cases to declare an act of the Legislature unconstitutional, and this obligation arises from the duty imposed upon the courts to declare what the law is.

The Constitution is the supreme law. It is ordained and established by the people, and all judges are sworn to support it. When the constitutionality of an act of the General Assembly is questioned, the courts place the act by the side of the Constitution, with the purpose and the desire to uphold it if it can be reasonably done, but under the obligation, if there is an irreconcilable conflict, to sustain the will of the people as expressed in the Constitution, and not the will of the legislators, who are but agents of the people.

*State v. Knight*, 169 N.C. 333, 351-52, 85 S.E. 418, 427 (1915).

Our duty, then, is to determine whether the "resign to run" statute is indeed contrary to the express terms of Article VI, Section 6. Article VI, Section 6 of the North Carolina Constitution provides: "*Eligibility to elective office.* Every qualified voter in North Carolina who is 21 years of age, except as in this Constitution disqualified, shall be eligible for election by the people to office." N.C. Const. art. VI, § 6. As we noted in *Baker v. Martin*, 330 N.C. 331, 410 S.E.2d 887 (1991):

**MOORE v. KNIGHTDALE BD. OF ELECTIONS**

[331 N.C. 1 (1992)]

> Unless the Constitution *expressly* or by *necessary implication* restricts the actions of the legislative branch, the General Assembly is free to implement legislation as long as that legislation does not offend some specific constitutional provision. . . . *[W]e note that [Article VI, Section 6] does expressly limit disqualifications to office for those who are elected by the people to those disqualifications set out in the Constitution.*

*Id.* at 338-39, 410 S.E.2d at 891-92 (emphasis of last sentence added). Thus, under Article VI, Section 6, "[t]he Legislature is . . . forbidden by the organic instrument to disqualify any voter, not disqualified by [the Constitution], from holding any office. The General Assembly cannot render any 'voter' ineligible for office by exacting any additional qualifications . . . ." *State ex rel. S. B. Spruill v. Bateman,* 162 N.C. 588, 591, 77 S.E. 768, 769 (1913); *see also Starbuck v. Havelock,* 252 N.C. 176, 179, 113 S.E.2d 278, 280 (1960); *Cole v. Sanders,* 174 N.C. 112, 114, 93 S.E. 476, 477 (1917) (Clark, C.J., concurring); *State of N.C. by the At. Gen'l, Hargrove, ex rel. Lee v. Dunn,* 73 N.C. 595, 602-03 (1875).

To be eligible for election to office under Article VI, Section 6, one must be: twenty-one years of age, a qualified voter, and not otherwise disqualified under the Constitution. Article VI, Section 2 describes the qualifications of voters and includes a residency period for both state and presidential elections. Article VI, Section 8 contains enumerated disqualifications for office as follows:

> The following persons shall be disqualified for office:

> First, any person who shall deny the being of Almighty God.

> Second, with respect to any office that is filled by election by the people, any person who is not qualified to vote in an election for that office.

> Third, any person who has been adjudged guilty of treason or any other felony against this State or the United States, or any person who has been adjudged guilty of a felony in another state that also would be a felony if it had been committed in this State, or any person who has been adjudged guilty of corruption or malpractice in any office, or any person who has been removed by impeachment from any office, and who has not been restored to the rights of citizenship in the manner prescribed by law.

MOORE v. KNIGHTDALE BD. OF ELECTIONS

[331 N.C. 1 (1992)]

N.C. Const. art. VI, § 8. Other constitutional provisions describe additional qualifications or prerequisites for particular offices.

The record does not suggest, and the parties do not contend, that plaintiffs are disqualified from seeking or holding office by any constitutional or statutory provision other than N.C.G.S. § 163-125(a). We thus consider that statute. By its plain terms the statute provides, "No individual may *qualify as a candidate for elective public office* who holds another elective office . . . more than 40 days of the term of which runs concurrently with the term of office for which he seeks to qualify without resigning from such office . . . ." N.C.G.S. § 163-125(a) (emphasis added). It is abundantly clear that the aforementioned constitutional qualifications and disqualifications do not include the "resign to run" qualification enacted by the General Assembly and codified at section 163-125(a).

The State argues that the statute is not an additional qualification for election to office because it can be characterized as (1) a legislative qualification on candidacy, or (2) a limitation on the right to retain one office while seeking another. First, the State notes that although Article VI, Section 6 requires broad eligibility for *election* to office, it makes no reference to the qualifications for an individual's *candidacy*. In contrast, the language of N.C.G.S. § 163-125(a) specifically governs those who may "qualify as a *candidate* for elective public office . . . ." N.C.G.S. § 163-125(a) (emphasis added). Because there is no constitutional provision speaking to the qualifications for candidacy, the State argues that the statute should be upheld as a reasonable exercise of the General Assembly's legislative authority. Second, the State notes that other jurisdictions have interpreted their "resign to run" statutes as limiting the right to retain office. For example, the Supreme Court of Florida has said with respect to that state's "resign to run" statute:

> [It] does not prescribe additional qualifications for the office, as the candidate may well be qualified in a legal sense to hold either. The law is simply a limitation upon the right to retain the office already held when seeking another. It is not a limitation upon the right to seek another office, for the incumbent of an office has the choice under the statute to retain it unmolested or give it up and seek another.

*Holley v. Adams*, 238 So. 2d 401, 406 (Fla. 1970); *accord Mulholland v. Ayers*, 109 Mont. 558, 99 P.2d 234 (1940).

**MOORE v. KNIGHTDALE BD. OF ELECTIONS**

[331 N.C. 1 (1992)]

We decline to adopt either characterization of the "resign to run" statute. Construing the statute as a qualification on candidacy is ineffective because the words candidacy and election in this context are related in such a manner that an additional qualification on candidacy inevitably constitutes an additional qualification on election to office. The provision of Article VI, Section 6 that "[e]very qualified voter . . . shall be eligible for election" necessarily implies that candidacy for an office will be the means to achieve election to it. Candidacy describes "the state of being a candidate" and the word candidate means "one that aspires to or is nominated or qualified for an office." *Webster's New Collegiate Dictionary* 159 (G. & C. Merriam Co. 1980). Thus, even under the State's construction of the statute, N.C.G.S. § 163-125(a) creates an additional limitation on the state of being one who is qualified for an office. " 'When the main purpose of a statute, or a part of a statute, is to evade the constitution by effecting indirectly that which cannot be done directly, the act is to that extent void, because it violates the spirit of the fundamental law.' " *Mulholland v. Ayers,* 109 Mont. at 575, 99 P.2d at 243 (Erickson, J., dissenting) (quoting *People v. Howland,* 155 N.Y. 270, 280, 49 N.E. 775, 778 (1898) ).

We also decline to follow the cases cited by the State for the proposition that the "resign to run" statute is merely a limitation on the right to retain the office already held. The language of our statute—"[n]o individual may qualify as a candidate for elective public office who holds another elective office . . . without resigning from such office"—reveals that its purpose is to establish a qualification for office rather than to serve as a limitation on continued occupancy of a currently held office. Further, characterizing the statute as a limitation on the right to retain an office to which an individual has been duly elected does not remove all constitutional concerns. Though we express no opinion on the issue, the State's interpretation of the statute appears to conflict with the provisions of Article VI, Section 10, which states: "*Continuation in office.* In the absence of any contrary provision, all officers in this State, whether appointed or elected, shall hold their positions until other appointments are made or, if the offices are elective, until their successors are chosen and qualified." N.C. Const. art. VI, § 10.

Thus, we are unpersuaded by the State's purported distinction between restrictions on candidacy and retaining office on the one hand and qualifications for election to office on the other. Both

MOORE v. KNIGHTDALE BD. OF ELECTIONS

[331 N.C. 1 (1992)]

logic and the plain meaning of the words dictate that the "resign to run" requirement is at bottom an additional qualification, beyond those prescribed in the Constitution, on those who are eligible to seek election to office. As Chief Justice Ervin stated in his dissenting opinion in *Holley*:

> [The statute] is a legislatively imposed requirement affecting and conditioning the status of a person seeking to qualify for election to a particular public office and as such is contrary to the qualification and disqualification provisions spelled out with specificity in the Constitution; burdens the potential candidate with a disqualification not prescribed in the Constitution; deprives him of the same freedom enjoyed by other electors not otherwise prohibited by the Constitution from seeking election to a public office; and denies the electorate of the state or county the candidacies of those who are unwilling to shed their current offices in order to become candidates.
>
> . . . .
>
> It is sheer sophistry to say that there is a dichotomy here—that [the statute] only regulates the right to continue to hold a current office without relation to eligibility or qualification to seek and hold another.

*Holley*, 238 So. 2d 401, 409-10 (Ervin, C.J., dissenting).

Finally, the State argues that the "resign to run" statute is a reasonable restriction on candidacy that is contemplated by the Constitution and that carries out identifiable policies under the Constitution. The State's argument is two-fold: (1) requiring a current officeholder to resign his or her office before becoming a candidate for another office implements the provision in Article VI, Section 9 prohibiting dual officeholding, and (2) requiring such resignation before the close of the filing period for election allows the vacancy to be filled by election rather than appointment, thereby effectuating the policy that elective offices be filled by election.

While arguably N.C.G.S. § 163-125(a) advances these constitutional policies to some extent, Article VI, Section 9 itself contains no provision that prevents *pursuing* one office while holding another. Instead, for reasons apparent in its own text it condemns dual *officeholding*. That section provides:

### Sec. 9. *Dual office holding.*

(1) *Prohibition.* It is salutary that the responsibilities of self-government be widely shared among the citizens of the State and that the potential abuse of authority inherent in the holding of multiple offices by an individual be avoided. Therefore, no person who holds any office or place of trust or profit under the United States or any department thereof, or under any other state or government, shall be eligible to hold any office in this State that is filled by election of the people. No person shall hold concurrently any two or more appointive offices or places of trust or profit, or any combination of elective and appointive offices or places of trust or profit, except as the General Assembly shall provide by general law.

N.C. Const. art. VI, § 9(1). The evil the section seeks to prevent is that of *holding* more than one office simultaneously. This evil is not present in the mere pursuit by an officeholder of another office.

Additionally, N.C.G.S. § 163-125 is selective in its purported implementation of the provisions against dual officeholding. Under the Constitution *all* dual officeholding is forbidden.[1] The statute, however, specifically excludes "persons holding any elective federal office" and "persons holding the office of judge or justice in the General Court of Justice who seek another office as a judge or justice in the General Court of Justice." N.C.G.S. § 163-125(e) (1991). The statute also requires an officeholder to resign only if the term of his or her current office overlaps with the term of the desired office by more than forty days. N.C.G.S. § 163-125(a). *Any* overlap in the *holding* of offices would violate the constitutional prohibition against dual officeholding. These statutory exceptions are obvious indications that the intent of the General Assembly in enacting this statute was not to implement the dual officeholding provisions of the state Constitution.

These exceptions also make it unlikely that the General Assembly intended through this legislation to ensure to the greatest extent possible that elective offices are filled by election rather

---

1. We have interpreted this constitutional provision so that acceptance of a second office automatically vacates the first. *See Barnhill v. Thompson,* 122 N.C. 493, 29 S.E. 720 (1898). Thus, prior to the enactment of the statute, the dual officeholding provision did not lack a means of implementation.

than appointment. In addition, the statute provides both that the office shall be deemed vacant at the time the official's resignation is submitted and that one who has resigned under its provisions shall not hold over until a successor is elected or appointed. N.C.G.S. § 163-125(b), (d) (1991). Thus, application of the statute itself guarantees that appointment of replacement officials will be necessary for at least a short period each time the statute forces a resignation. Finally, contrary to the State's argument, because the dates of filing and election vary from year to year the statute does not assure that an election will be held to fill the vacated office.

To the extent the "resign to run" statute does implement important policies under the Constitution, the State contends that it is a reasonable restriction on the election process similar to other restrictions this Court has upheld previously. Undoubtedly, "[s]o long as there is no unjust discrimination the State may, by exercising its inherent police power, suppress whatever evils may be incident to a primary or convention for the designation of candidates for election to public office. Statutes prescribing reasonable rules and regulations to this end are constitutional." *McLean v. Board of Elections*, 222 N.C. 6, 10-11, 21 S.E.2d 842, 845 (1942) (citations omitted).

In *McLean*, this Court upheld requirements that the plaintiff file notice of his candidacy, sign a required pledge to abide by the result of the primary, and pay a filing fee.[2] *Id.* We also have upheld other "assurance[s] for the faithful discharge of the duties of the office." *Bateman*, 162 N.C. at 592, 77 S.E. at 769 (discussing *Dunn*, 73 N.C. 595). *See, e.g., Caldwell v. Wilson*, 121 N.C. 425, 470, 28 S.E. 554, 562 (1897) (statute requiring candidate for state railroad commissioner to hold no interest in operation of railroad); *Dunn*, 73 N.C. 595 (requirement that elected official account for monies collected during first term of office).

The statute at issue here, however, is not like the regulations upheld in *McLean, Caldwell,* and *Dunn*. This statute is neither a mere "assurance" of the faithful discharge of official duties, nor is it a regulation that applies uniformly to those who seek elective office. Rather than operating as a regulation of the procedures

---

2. The Court did not address in *McLean* the specific question of whether the regulations were additional qualifications to election.

necessary to the orderly conduct of the election, this statute effectively disqualifies a distinct category of potential candidates.

In *Preston*, 325 N.C. 438, 385 S.E.2d 473, we upheld against constitutional challenge the provisions of N.C.G.S. § 163-106 which required that "no person may file a notice of candidacy for superior court judge unless that person is at the time of filing the notice of candidacy a resident of the judicial district as it will exist at the time the person would take office if elected." *Id.* at 461-62, 385 S.E.2d at 486 (quoting 1987 N.C. Sess. Laws ch. 509, tit. IV, § 13). Article IV, Section 9 provided only that "[e]ach regular Superior Court Judge shall reside in the district for which he is elected." N.C. Const. art. IV, § 9. The Court in *Preston* compared the residency requirements for other offices under the Constitution with the residency requirement for superior court judgeships and concluded that there existed a "constitutional intent to provide the legislature some limited flexibility in setting residency requirements for candidates for superior court judgeships." *Preston*, 325 N.C. at 462, 385 S.E.2d at 486.

The State argues that just as in *Preston* the legislature was permitted to change the residency requirement for superior court judgeships from a post-election condition to a pre-election condition, it should be permitted to change the dual officeholding prohibition from post-election to pre-election with the "resign to run" law. This argument is without merit. In *Preston* residency was a *qualification* for office already provided by the Constitution for superior court judgeships. N.C. Const. art. IV, § 9. The Court compared this office-specific qualification with the residency qualifications for other constitutional offices and discerned a constitutional intent to provide legislative flexibility in implementing the qualification for office. In this case, by contrast, the dual officeholding provision of Article VI, Section 9 is not a qualification for election to office that requires implementation by the legislature prior to an election. Instead, it is a prohibition against *holding* two offices simultaneously. As stated above, the prohibition is not against seeking a second office, it is against simultaneously holding a second office. Whereas "qualification" implies a precondition to attainment of an office, "holding" connotes a *fait accompli*, an "occupancy as a result of an appointment, promotion, or election." *Webster's New Collegiate Dictionary* 540. In light of the plain language of the provision against dual officeholding, we detect no intent to allow the General Assembly

to transform a prohibition against a post-election condition into a pre-election qualification for office.

We conclude that N.C.G.S. § 163-125, the "resign to run" statute, is contrary to the express terms of Article VI, Section 6, of the North Carolina Constitution. Plaintiffs are qualified voters in North Carolina, who are not disqualified from elective office by any provision of our Constitution. Hence, they are "eligible for election by the people to office" under the express language of Article VI, Section 6. The legislative attempt to require the resignation of those having plaintiffs' status as holders of "another elective office" imposes an additional qualification for elective office, not provided by our Constitution; thus, it fails to pass constitutional muster.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.