ROBERT BAXTER, Employee v. DANNY NICHOLSON, INC., Employer, SELF-INSURED (KEY RISK MANAGEMENT SERVICES, Servicing Agent)

No. 351PA08

(Filed 12 March 2010)

## Public Officers and Employees— Industrial Commissioner— new appointment—oath not yet taken—authority of prior Commissioner

The authority of an Industrial Commissioner holding over after his term expired because no replacement had been appointed continued through the period between a successor's appointment and the successor taking the oath of office, and the Industrial Commission correctly denied defendant's motion to vacate a workers' compensation opinion and award made during the holdover period by a panel on which the holdover Commissioner was a member of the two-to-one majority. There is nothing in the North Carolina Constitution to suggest that its drafters sought to limit the power of the legislature to require an oath and to guard against vacancies in appointed offices. The statutory framework provided by the General Assembly wisely and plainly avoids the problem of vacancies and is consistent with the Constitution. N.C.G.S. § 128-7.

Justice BRADY concurring in the result only.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 191 N.C. App. 168, 661 S.E.2d 892 (2008), vacating an opinion and award filed 5 February 2007 by the North Carolina Industrial Commission and remanding the case to the Commission. Heard in the Supreme Court 18 November 2009.

*DeVore, Acton & Stafford, P.A., by William D. Acton, Jr., for plaintiff-appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Shelley W. Coleman, for defendant-appellee.*

*Roy Cooper, Attorney General, by Christopher G. Browning, Jr., Solicitor General, and John F. Maddrey, Assistant Solicitor General, for the State of North Carolina, amicus curiae.*

*Robert F. Orr and Jeanette K. Doran for North Carolina Institute for Constitutional Law, amicus curiae.*

BAXTER v. NICHOLSON

[363 N.C. 829 (2010)]

HUDSON, Justice.

This case presents the question whether the term of an appointed public officer ends immediately upon the appointment of his successor by the governor or when the successor takes the oath of office. We find that the General Assembly answered this question when it enacted N.C.G.S. § 128-7, which provides: "All officers shall continue in their respective offices until their successors are elected or appointed, and duly qualified." Under the plain meaning of the statute, we conclude that the authority of an appointed officer continues until the date on which his successor takes the oath of the office in question and thereby becomes duly qualified to begin performing the duties of that office.

On 5 February 2007, by a two-to-one majority, a panel of the Full Commission filed an opinion and award ordering defendant Danny Nicholson, Inc. to pay plaintiff Robert Baxter workers' compensation benefits, including: (1) total disability benefits and medical expenses from 13 July 1998 until the Commission orders otherwise; (2) a ten percent penalty on all unpaid installments of compensation from 13 July 1998 on; and (3) the standard attorney's fee award in such cases, plus an additional attorney's fee for the time spent by plaintiff's counsel on this matter. The award stemmed from injuries that plaintiff sustained during a workplace accident on 23 December 1996, while employed by defendant. Much of the dispute before the Industrial Commission centered on the nature of plaintiff's trial return to work and defendant's alleged unilateral termination of plaintiff's benefits.

Although the Full Commission's opinion and award was filed on 5 February 2007, the document was signed and dated by the panel on 2 February 2007. On that same date, then-Governor Michael Easley sent a letter to Commissioner Thomas Bolch, a member of the two-person majority of the panel, informing him that his service as a Commissioner was at an end and that his successor had been appointed. Commissioner Bolch's term had actually expired in 2004, and he had been holding over in his position since that time. The Governor sent another letter, also dated 2 February 2007, to the replacement Commissioner, Danny Lee McDonald, notifying him that his appointment was "effective immediately." Commissioner McDonald did not take the oath of office until 9 February 2007.

According to an affidavit from a member of the Governor's staff, "Commissioner Bolch was authorized to hold over in his position . . . until the date of the swearing in of Commissioner McDonald that

took place on or about February 9, 2007. One of the important reasons for Commissioner Bolch being specifically authorized to hold over until the date of the McDonald swearing in was to give the Industrial Commission time to issue and file any decisions, such as the current Baxter case, which had already been heard on oral argument by panels involving Commissioner Bolch but which were pending the filing of a resulting formal written opinion and award."

Based on the filing of the opinion and award after the date that Commissioner Bolch's successor had been appointed, defendant filed a motion to vacate the decision and for reconsideration and rehearing. Defendant argued, and continues to maintain, that the opinion and award was void as a matter of law because Commissioner Bolch no longer held his office, and the panel thus comprised only two members, who split their votes. On 13 March 2007, the Full Commission filed an order denying defendant's motions, and defendant appealed that order, as well as the underlying 5 February 2007 opinion and award, to the Court of Appeals. In a unanimous opinion, the Court of Appeals agreed with defendant that Commissioner Bolch "was not a qualified commissioner at the time the Opinion and Award was filed because his term as commissioner had ended and his successor had been appointed." *Baxter v. Danny Nicholson, Inc.,* 191 N.C. App. 168, 170, 661 S.E.2d 892, 893 (2008). The Court of Appeals vacated the opinion and award as void and remanded the case to the Full Commission for rehearing. *Id.* at 173, 661 S.E.2d at 895. On 27 August 2009, we allowed plaintiff's petition for discretionary review of the Court of Appeals holding, as well as the underlying substantive issues on appeal, which were not addressed by the Court of Appeals.

Article VI, Section 10 of the North Carolina Constitution, entitled "Continuation in office," provides: "In the absence of any contrary provision, all officers in this State, whether appointed or elected, shall hold their positions until other appointments are made or, if the offices are elective, until their successors are chosen and qualified." N.C. Const. art. VI, § 10. Moreover, under N.C.G.S. § 128-7, entitled "Officer to hold until successor qualified," "[a]ll officers shall continue in their respective offices until their successors are elected or appointed, and duly qualified." N.C.G.S. § 128-7 (2007). Defendant argues that, had the drafters of our Constitution intended for appointed officers to hold over until their successors are appointed *and* qualified, as provided by the statute, then Article VI, Section 10 would have specifically included language to the effect that

BAXTER v. NICHOLSON

[363 N.C. 829 (2010)]

appointed officers "shall hold their positions until other appointments are made and qualified." Thus, according to defendant, the General Assembly essentially exceeded its legislative authority by enacting a statute that, in defendant's view, conflicts with this constitutional provision.

When considering the constitutionality of a statute, this Court long ago articulated the following principles:

> The Constitution is the supreme law. It is ordained and established by the people, and all judges are sworn to support it. When the constitutionality of an act of the General Assembly is questioned, the courts place the act by the side of the Constitution, with the purpose and the desire to uphold it if it can be reasonably done, but under the obligation, if there is an irreconcilable conflict, to sustain the will of the people as expressed in the Constitution, and not the will of the legislators, who are but agents of the people.

*State ex rel. Att'y-Gen. v. Knight*, 169 N.C. 396, 416, 169 N.C. 333, 352, 85 S.E. 418, 427 (1915). Thus, "[e]very presumption favors the validity of a statute. It will not be declared invalid unless its unconstitutionality be determined beyond reasonable doubt. This is a rule of law which binds us in deciding this case." *Baker v. Martin*, 330 N.C. 331, 334-35, 410 S.E.2d 887, 889 (1991) (brackets in original) (citations and internal quotation marks omitted); *see also Tetterton v. Long Mfg. Co.*, 314 N.C. 44, 49, 332 S.E.2d 67, 70 (1985) ("A statute will not be declared unconstitutional unless it is clearly so, and all reasonable doubt will be resolved in favor of its validity." (citation omitted)); *In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388 (1978) ("A well recognized rule in this State is that, where a statute is susceptible to two interpretations—one constitutional and one unconstitutional—the Court should adopt the interpretation resulting in a finding of constitutionality." (citations omitted)); *Painter v. Wake Cty. Bd. of Educ.*, 288 N.C. 165, 177, 217 S.E.2d 650, 658 (1975) ("In considering the constitutionality of a statute, it is well established that the courts will indulge every presumption in favor of its constitutionality." (citations omitted)).

In *State ex rel. Martin v. Preston*, we further explained the reasoning behind this deference:

> Since our earliest cases applying the power of judicial review under the Constitution of North Carolina, . . . we have indicated that great deference will be paid to acts of the legislature—the

BAXTER v. NICHOLSON

[363 N.C. 829 (2010)]

agent of the people for enacting laws. This Court has always indicated that it will not lightly assume that an act of the legislature violates the will of the people of North Carolina as expressed by them in their Constitution and that we will find acts of the legislature repugnant to the Constitution only *"if the repugnance do really exist and is plain."*

Our acceptance of our duty to exercise the power of judicial review under the Constitution of North Carolina, tempered by our recognition of every reasonable presumption that the legislature as the lawmaking agent of the people has not violated the people's Constitution, has led this Court in more recent generations to accept certain principles of state constitutional construction which are now well established. For example, it is firmly established that our State Constitution is not a grant of power. *All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution.*

325 N.C. 438, 448-49, 385 S.E.2d 473, 478 (1989) (emphases added) (citations omitted). Likewise, "all constitutional provisions must be read *in pari materia." Stephenson v. Bartlett*, 355 N.C. 354, 378, 562 S.E.2d 377, 394 (2002).

The statute here provides that "[a]ll officers *shall continue* in their respective offices until their successors are elected or appointed, *and duly qualified."* N.C.G.S. § 128-7 (emphases added). Giving the words and construction of the statute their plain meaning, the phrase "and duly qualified," immediately following the adjectives "elected or appointed," serves to modify and describe both types of officer. Thus, under the statute, an appointed public officer holds over in his or her position until a successor is both appointed and duly qualified. By contrast, the constitutional provision explicitly only allows an elected officer to hold over until a successor is "chosen and qualified," whereas appointed officers "shall hold their positions until other appointments are made." N.C. Const. art. VI, § 10.

Such a variance renders the statute unconstitutional if and only if our Constitution evinces the drafters' intent to limit the power of the legislature to address the policies advanced here—namely, to require an oath of office and to guard against vacancies in appointed offices—or to otherwise prohibit the legislature's exercise of that power. *See Preston*, 325 N.C. at 449, 385 S.E.2d at 478; *see also Baker*,

330 N.C. at 338-39, 410 S.E.2d at 891-92 ("Unless the Constitution *expressly* or by *necessary implication* restricts the actions of the legislative branch, the General Assembly is free to implement legislation as long as that legislation does not offend some specific constitutional provision."). As for the oath, the drafters made their intentions clear by including a specific provision requiring an oath of office: Article VI, Section 7 states that, "[b]efore entering upon the duties of an office, a person elected *or appointed* to the office shall take and subscribe the following oath . . . ." Both N.C.G.S. § 128-7 and N.C.G.S. § 128-5, which imposes a fine on any officer required to take an oath who fails to do so "before entering on the duties of the office," are consistent with and indeed promote this goal.

In addition, we find no language in our state Constitution suggesting any limitation on the legislature's authority to advance the policy of guarding against vacancies in appointed offices. *Cf. Moore v. Knightdale Bd. of Elections*, 331 N.C. 1, 12, 413 S.E.2d 541, 547 (1992) ("The legislative attempt to require the resignation of those having plaintiffs' status as holders of 'another elective office' imposes an additional qualification for elective office, not provided by our Constitution; thus, it fails to pass constitutional muster."). *But see Baker*, 330 N.C. at 333-34, 339, 410 S.E.2d at 888-89, 892 (upholding as constitutional a statute requiring that candidates for appointment to fill unexpired terms of district court judges be members of the same political party as the vacating judge, because the Constitution does not limit disqualifications for appointed offices and "[t]he wording . . . also does not *necessarily* imply that additional disqualifications cannot be added by the General Assembly for those persons not elected by the people").

Our reading likewise conforms with the long-standing public policy of this State against vacancies in both elected and appointed offices:

> The provision that the incumbents of offices, both elective and appointive, shall hold until their successors are selected and qualified, is in accord with a sound public policy which is against vacancies in public offices and requiring that there should always be some one in position to rightfully perform these important official duties for the benefit of the public and of persons having especial interest therein.
>
> [The provisions] in reference to these appointive offices . . . . are recognized both in our Constitution and general statutes, and

> whether regarded as part of an original term or a new and conditional term by virtue of the statute, the holders are considered by the authorities as officers *de jure* until their successors have been lawfully elected or appointed by the body having the right of selection, *and have been properly qualified* . . . .

*Markham v. Simpson*, 175 N.C. 135, 137, 175 N.C. 146, 148, 95 S.E. 106, 107 (1918) (emphasis added) (citations omitted). As noted by the State in its amicus brief here to this Court, "our state government would be less able to serve its citizens effectively if significant gaps in time existed between when one official leaves office and his or her successor begins serving." As such, the State maintains that "it is imperative that there is no uncertainty as to when the authority of an incoming official commences and when the authority of the outgoing ceases," and the General Assembly has provided that certainty by enacting N.C.G.S. § 11-7, requiring the oath of office before taking office, and § 128-7, directing that an appointed official hold over until his successor is duly qualified.

Here, when we place the constitutional and statutory provisions side by side, we see that the General Assembly has merely expanded on Article VI, Sections 7 and 10, to require that a public servant swear an oath before taking office, and to ensure that the office will not be made vacant by a delay between the appointment of a successor and his lawful entry into office upon becoming qualified, in this case, by taking the oath. *See, e.g.*, N.C. Const. art. VI, § 7 ("Before entering upon the duties of an office, a person elected or appointed to the office shall take and subscribe the following oath . . . ."); N.C.G.S. § 11-7 (2007) (providing that "every person elected or appointed to hold any office of trust or profit in the State shall, before taking office or entering upon the execution of the office, take and subscribe to the following oath . . ."); *Town of Hudson v. Fox*, 257 N.C. 789, 790, 127 S.E.2d 556, 556 (1962) (noting that commissioners "were qualified by taking the required oath"); *Sudderth v. Smyth*, 35 N.C. (13 Ired.) 307, 308, 35 N.C. 452, 453 (1852) (observing that a deputy clerk is not qualified until he "tak[es] the oaths to support the constitutions of the United States and of this State, and an oath of office").

By enacting N.C.G.S. § 128-7, the General Assembly has essentially provided the type of "assurance for the faithful discharge of the duties of the office," *State ex rel. Spruill v. Bateman*, 162 N.C. 486, 489-90, 162 N.C. 588, 593, 77 S.E. 768, 769 (1913) (emphasis omitted), that this Court has previously recognized as well within the legislature's role and the dictates of the Constitution. *See also State ex rel.*

*Lee v. Dunn*, 73 N.C. 595, 604-08 (1875) (holding that the General Assembly could not impose any additional qualification on eligibility for *elective* office, other than what is provided in the Constitution, and concluding that requiring a sheriff to tender a bond and receipts for taxes collected is not an added qualification).[1] Indeed, we conclude that the holdover language at issue here is consistent with the constitutional and statutory requirements that an elected or appointed officer must take the oath of office "[b]efore entering upon the duties" of that office, N.C. Const. art. VI, § 7; N.C.G.S. § 11-7, and also ensures that a vacancy will not be created by a gap between appointment to office and assumption of the duties of that office upon taking the oath.

We decline to approve an interpretation that would result in a vacancy and cessation of the work of an appointed officer immediately upon the announcement of a successor. Voiding actions taken by a holdover official during the time between the announcement of a successor and that successor's swearing-in could promote disruption and delay completion of important work already performed on the State's behalf. We see no reason to act contrary to the reasoning outlined in *Markham*, or to conclude that immediately terminating an officeholder's authority would represent a more sound public policy. We conclude instead that the statutory framework specifically provided by the General Assembly wisely and plainly avoids this problem of vacancies, and is consistent with the Constitution.

In sum, we find unpersuasive defendant's arguments that we should ignore the plain language of N.C.G.S. § 128-7 and focus exclusively on the distinction drawn in Article VI, Section 10 between elected and appointed officers. We discern no conflict—and certainly no "plain repugnance"—between Article VI, Section 10 and N.C.G.S. § 128-7 that would defeat the presumption of constitutionality and

---

1. The concurring opinion is inconsistent with our past jurisprudence on the unconstitutionality of legislatively required additional qualifications for *elective* offices, as compared with the constitutionality of such qualifications for *appointed* offices. *See, e.g., Baker*, 330 N.C. at 341, 410 S.E.2d at 893 ("The plaintiff relies on *Starbuck v. Havelock*, 252 N.C. 176, 113 S.E.2d 278 (1960); *Cole v. Sanders*, 174 N.C. 112, 93 S.E. 476 (1917); *Spruill v. Bateman*, 162 N.C. 588, 77 S.E. 768; and *State of N.C. by the At. Gen'l, Hargrove, ex rel. Lee v. Dunn*, 73 N.C. 595 (1875), for the proposition that qualifications for holding office may not be added to those found in the Constitution. These cases deal with elections to offices and are not applicable to this case. This case deals with an appointment to office."). As this Court noted in *Baker*, the General Assembly has enacted any number of statutes imposing additional qualifications for appointed offices, including for vacant seats to the General Assembly, notaries public, and the various state licensing boards. *Id.* at 339-40, 410 S.E.2d at 892.

BAXTER v. NICHOLSON

[363 N.C. 829 (2010)]

require us to ignore the meaning of the statute, particularly in light of Article VI, Section 7. The constitutional and statutory provisions may reasonably be read and considered together, and nothing in our Constitution suggests that the drafters sought to limit the power of the legislature to require an oath and to guard against vacancies in appointed offices. Accordingly, we hold that Commissioner Bolch's official authority continued from 2 February 2007 until Commissioner McDonald was sworn in as his successor on 9 February 2007. The opinion and award of the Full Commission filed in this case on 5 February 2007 stands as a valid exercise of that authority.[2]

We reverse the Court of Appeals opinion and remand to that court for consideration of the substantive issues raised in defendant's appeal of the Full Commission's opinion and award in favor of plaintiff.

REVERSED AND REMANDED.

Justice BRADY concurring in the result only.

I agree with the ultimate holding of the majority opinion, but write further to clarify important constitutional principles and to emphasize the importance of the continuity in government that is essential for a stable and ordered society. I begin with an analysis of the relevant constitutional provisions because the "North Carolina Constitution expresses the will of the people of this State and is, therefore, the supreme law of the land." *In re Martin*, 295 N.C. 291, 299, 245 S.E.2d 766, 771 (1978) (citation omitted).[3]

---

2. The concurring opinion states that "Mr. Bolch's authority . . . could have been *displaced* by the actions of the newly appointed Mr. McDonald before Mr. McDonald took the oath." However, the validity of any actions taken by Commissioner McDonald is not at issue here. This case involves only Mr. Bolch's holdover authority to concur in a Full Commission opinion and award. As such, we decline to speculate on hypothetical actions taken by Mr. McDonald between 2 February and 9 February 2007, which issue is not before this Court.

3. Indeed, the Preamble to our Constitution affirms:

> *We, the people of the State of North Carolina, grateful to Almighty God, the Sovereign Ruler of Nations, for the preservation of the American Union and the existence of our civil, political and religious liberties, and acknowledging our dependence upon Him for the continuance of those blessings to us and our posterity, do, for the more certain security thereof and for the better government of this State, ordain and establish this Constitution.*

N.C. Const. pmbl.

BAXTER v. NICHOLSON

[363 N.C. 829 (2010)]

The North Carolina Constitution distinguishes between elected and appointed officials when providing for continuity of service in government offices. Article VI, Section 10 states: "In the absence of any contrary provision, all officers in this State, whether appointed or elected, shall hold their positions *until other appointments are made* or, if the offices are elective, until their successors are chosen and qualified." N.C. Const. art. VI, § 10 (emphasis added). This provision establishes that elected officials must be chosen through the appropriate elective processes "*and qualified.*" *Id.* (emphasis added). Conversely, under the Constitution an appointed official holds the position until another appointment is made. *See State ex rel. Martin v. Preston,* 325 N.C. 438, 449, 385 S.E.2d 473, 479 (1989) ("In interpreting our Constitution—as in interpreting a statute—where the meaning is clear from the words used, we will not search for a meaning elsewhere." (citing *Elliott v. State Bd. of Equalization,* 203 N.C. 749, 753, 166 S.E. 918, 920-21 (1932))). Although the Constitution contains a host of other qualifications for certain elected officials, no other qualifications for appointed officials are constitutionally mandated. *See, e.g.,* N.C. Const. art. III, § 2 (listing qualifications for election to the office of Governor or Lieutenant Governor); *id.* art. IV, § 22 (listing qualifications for elected justices and judges).

The majority opinion cites *Baker v. Martin,* 330 N.C. 331, 410 S.E.2d 887 (1991) for the proposition that the General Assembly may add qualifications not found in the Constitution to the holding of appointed offices. *See id.* at 341-42, 410 S.E.2d at 893. This Court in *Baker* recognized that "[u]nless the Constitution expressly or *by necessary implication* restricts the actions of the legislative branch, the General Assembly is free to implement legislation as long as that legislation does not offend some specific constitutional provision." *Id.* at 338-39, 410 S.E.2d at 891-92 (emphasis added). I agree with "this general principle of constitutional interpretation," *id.* at 339, 410 S.E.2d at 892, although I find that when the taking of the oath is the issue under consideration, the Constitution expresses when that event occurs. The Constitution makes the oath a prerequisite to "entering upon the duties of an office" for appointed officials. N.C. Const. art. VI, § 7 ("Before entering upon the duties of an office, a person elected or appointed to the office shall take and subscribe the following oath: . . . ."). Moreover, this Court has long recognized that "[p]ublic officers are usually required to take an oath," but the oath is a "*mere incident[], and constitute[s] no part of the office.*" *State ex rel. Clark v. Stanley,* 66 N.C. 59, 63 (1872) (emphasis added). As such,

when the taking of the oath is considered, it appears the Constitution provides that an appointed official holds the office to which he has been appointed first and then subsequently takes the oath, not as a qualification to being appointed to the office, but merely as a prerequisite to commencing the duties of the post. This view is in line with the statutory penalty recognized for someone who exercises the duties of an office before taking a required oath. *See* N.C.G.S. § 128-5 (2009) (requiring the taking of the oath "before entering on the duties of the office," but not requiring the oath as an added qualification to holding an appointed office). Thus, exercising the duties of the office before taking the oath cannot invalidate those acts, although doing so may subject the official to the possibility of the statutory penalties. *See Vance S. Harrington & Co. v. Renner*, 236 N.C. 321, 327, 72 S.E.2d 838, 842 (1952) (explaining that "failure to take an oath of office" may subject one to a penalty but would not invalidate official acts performed before taking the oath). In light of these constitutional considerations, N.C.G.S. § 11-7, which requires the oath for elected and appointed State officials, mandates a precursor to carrying out the duties of an appointed post but does not make the oath an added qualification to being appointed to an office.

Alongside the relevant constitutional provisions, this Court has long recognized that "sound public policy . . . is against vacancies in public offices and require[s] that there should always be some one in position to rightfully perform these important official duties for the benefit of the public." *State ex rel. Markham v. Simpson*, 175 N.C. 146, 148, 175 N.C. 135, 137, 95 S.E. 106, 107 (1918). The General Assembly has codified this public policy, stating: "All officers shall continue in their respective offices until their successors are elected or appointed, and duly qualified." N.C.G.S. § 128-7 (2009). Interpreting section 128-7 in such a way that it corresponds with the Constitution, *see Sessions v. Columbus Cty.*, 214 N.C. 634, 638, 200 S.E. 418, 420 (1939) (explaining that when possible, "[r]econciliation is a postulate of constitutional as well as of statutory construction" (citation omitted)), results in the view that the phrase "duly qualified" in regard to appointed officials taking the oath means "duly qualified to enter upon the duties of the office."

Turning to the case *sub judice*, "[t]he Industrial Commission is primarily an administrative agency of the State." *Hanks v. S. Pub. Utils. Co.*, 210 N.C. 312, 319, 186 S.E. 252, 257 (1936) (citation omitted). Members of the Commission are public officers. *See Stanley*, 66

N.C. at 63. When Mr. McDonald was appointed as a member of the Industrial Commission on 2 February 2007, under the Constitution and by statute, his appointment was effective immediately for purposes of holding the office. N.C. Const. art. VI, § 10; *see also* N.C.G.S. § 97-77 (2009) (stating that "[t]he Governor shall appoint the members of the [Industrial] Commission," implying immediate efficacy to the appointment). Moreover, as explained above, the Constitution provides the taking of the oath for appointed officials as a prerequisite to entering upon the duties of the position and not as a qualification to being appointed to office or for holding an office. The fact that Mr. McDonald did not attempt to enter upon the duties of his office before he took the oath on 9 February 2007 means he complied with Article VI, Section 7 of the Constitution and avoided the possibility of the penalties mentioned in N.C.G.S. § 128-5. Moreover, Mr. Bolch "continued in [his] respective office[]" under the statutory authority established in N.C.G.S. § 128-7—which provides continuity in government—until Mr. McDonald was qualified to enter upon the duties of his office after taking the oath on 9 February 2007.

Mr. Bolch's authority, although valid as a statutory holdover official, could have been *displaced* by the actions of the newly appointed Mr. McDonald before Mr. McDonald took the oath. *See Renner*, 236 N.C. at 327, 72 S.E.2d at 842. For reasons that do not require elaboration here, an official may need to begin making some decisions and performing certain duties immediately upon appointment out of necessity and for the good of the public, regardless of whether the oath has been administered at that point. The important principle of continuity in governance means that, even before taking the oath, a newly appointed official may need to make hiring or firing decisions or other administrative determinations that will enable him to "hit the ground running" as soon as the oath is taken. In this case, however, the employer introduced no evidence that Mr. McDonald entered into the performance of his duties of the office of commissioner before taking the oath. Consequently, the 5 February 2007 opinion and award of the Full Commission bearing Mr. Bolch's signature is valid, as the majority opinion recognizes.

Out of concern for clarifying the unique and paramount role of the Constitution in this matter and in order to stress the importance of continuity in government offices, I respectfully concur with the holding of the majority.